Cutter *v.* Perkins.

THOMAS M. CUTTER *and others versus* EDWARD O. PERKINS,
and EDWARD E. BOURNE, *Ex'r, Trustee.*

Under the provisions of R. S., 1841, c. 119, § 63, (R. S., 1857, c. 86, § 55,)
  enacting that no person shall be adjudged trustee " by reason of any money
  or other thing due from him to the principal defendant, unless it is, at the
  time of the service of the writ upon him, due absolutely, and without
  depending upon any contingency," the liability of the trustee is not neces-
  sarily to be determined upon his disclosure made at the first term, if there
  are matters to be settled afterwards, in order to ascertain the fact and amount
  of the trustee's indebtedness to the principal defendant.

The " contingency" referred to in the statute is one which may prevent the
  principal from having any claim upon the trustee, or right to call on him to
  account; and not one which, although the principal may require the trustee
  to account, may show, on settlement made, that there is nothing due.

Where a testator provided by his will that all his real and personal property
  should be sold by his executor, and, after the payment of debts, legacies and
  expenses, gave the residue to A and B; and the executor was summoned as
  trustee of B, before he could ascertain whether, on the settlement of the
  estate, there would remain any balance to be paid to B under the residuary
  clause, the case may be continued until the estate is so far settled as to
  ascertain the amount of the residuary fund, and the executor be required to
  make further disclosure, showing the facts when ascertained; and he will
  be chargeable as trustee for whatever sum may be found to be in his hands
  belonging to B.

The fact that the fund, from which the debts and legacies were to be paid,
  was to be derived in part from the sale of real estate, placed the residuary
  legatees in no different relations to the executor, than if the testator's estate
  had all been personal.

The executor is liable to be called on to account for the estate, both real and
  personal, by A and B, although, on the settlement, there may prove to be
  nothing due to them.

The residuary fund which proved to be in the executor's hands for A and B,
  on settlement of his account of administration, was as substantially in his
  hands when he was served with the process, as though the sales had been
  made and the avails received before the service was made.

ASSUMPSIT.  The alleged trustee appeared and disclosed
at the first term, denying that he had, at the time of the
service of the plaintiff's writ, any goods, effects or credits of
the defendant in his hands or possession, but admitting that
he was executor of the will of John Hovey, and, as such, had

returned an inventory of his estate, and had sold the personal property, for which he had received about $1100.

At subsequent terms, the alleged trustee made further disclosure, in answer to questions put to him by the plaintiff's counsel, from which it appeared that, in October, 1857, he settled his account of administration on the estate of his testator, at the Probate Court in the county of Cumberland; that there was then a balance in his hands, to be appropriated according to the provisions of the will of said Hovey, of $6479,75; and that, if his construction of the will was correct, there was of that sum due to the two sons of Eunice Perkins, deceased, $3327,84, if said two sons were both living, at the time of the execution of said will; that one of said sons, John H. Perkins, was and still is living, and the other, only known to the trustee by the name of Octavius, was supposed to have deceased several years since, but, if living, there was due to him $1663,92, on the trustee's construction of the will; and that he, as executor, had sold all the real and personal estate of his testator, and paid all the debts, specific legacies and administration expenses, leaving the balance in his hands above specified.

At the September term, 1858, judgment was rendered against the defendant, Edward O. Perkins, for $6889,60 cents, after a trial and issue joined, and upon the verdict of a jury. At the same term, the plaintiffs filed a declaration, in which, after reciting the facts as to the trial and judgment obtained against the defendant, they alleged that he was one of the two sons of Eunice Perkins, sister of John Hovey, and, as such, was a legatee or devisee under his will, of which the trustee Bourne was executor, &c. These facts were admitted by Bourne.

The will of John Hovey, the alleged trustee's testator, amongst other provisions, contained the following:—

"10th.—After paying all debts, administration expenses and the burying yard appropriations, I give to my sister Eunice Perkins two-fifths of all my estate; and after all other

legacies and devises aforesaid are satisfied and paid, what remains I give to the two sons of my sister Eunice."

The 11th clause directed the executor " to sell and convey all the real and personal estate, for the purpose of paying off all said legacies, and the balance according to said residuary clause."

At *Nisi Prius,* RICE, J., presiding, adjudged Bourne to be the trustee of the defendant; to which adjudication the alleged trustee filed exceptions.

*Bourne,* in support of the exceptions, argued, at great length, that he could not legally be adjudged trustee of the defendant, because there wâs no sum of money due from him to said defendant, " at the time of the service of the writ upon him, absolutely, and without depending upon any contingency," R. S., c. 119, § 63 ; and contended that the recent Massachusetts decisions in similar cases were unsound in principle.

The uniform construction given, in all other cases, to the words " absolute" and " contingency," he contended, confirmed his view. In support of his position, he cited and commented on sundry authorities, as *Roberts* v. *Peake,* 1 Barrows, 325 ; 2 L'd Raymond, 1361, 1563 ; 3 Wilson, 207 ; 2 Bos. & Pul., 443 ; *Jennie* v. *Hearle,* 1 Stra., 591 ; *Wentworth* v. *Whittemore,* 1 Mass. 471 ; *Davis* v. *Ham,* 3 Mass., 36 ; *Frothingham* v. *Haley,* 3 Mass., 69 ; *Willard* v. *Sheaf,* 4 Mass., 235 ; *Barnes* v. *Treat,* 7 Mass., 272 ; *Hawes* v. *Aiken,* 3 Pick., 1 ; *Williams* v. *Marston,* 3 Pick., 65 ; *Thorndike* v. *DeWolfe,* 6 Pick., 120 ; *Guild* v. *Holbrook,* 11 Pick., 101 ; *Bissell* v. *Story,* 9 Pick., 562 ; *Faulkner* v. *Waters,* 11 Pick., 475 ; *Tucker* v. *Clisby,* 12 Pick., 24 ; *Rundlet* v. *Jordan,* 3 Maine, 47 ; *Lupton* v. *Cutler,* 8 Pick., 304.

The liability of the trustee must be determined by the state of facts existing at the time when the process is served, although not so held in New Hampshire. *Ingalls* v. *Dennett,* 6 Maine, 79 ; *Smith* v. *B. & C. R. R. Co.,* 33 N. H., 337 ; *Mace* v. *Heald,* 36 Maine, 136. The whole statute implies that the Court is to be confined to the facts existing at the

time of the attachment, as set forth in the disclosure made *at the first term.* § § 9, 12, 16, 22, 24, 26 and 90. The alleged trustee is not to be compelled to attend court after court, to disclose what progress he is making in a matter of business which concerns only himself and those for whom he is acting. His answers, given at the first term, are taken to be true; and if *then,* submitting himself to examination, no evidence of assets is elicited, he is entitled to his discharge.

If subsequent reception of assets is to render him liable, that fact requires, under the statute, the additional allegation of the plaintiff provided for, and evidence to sustain it. But no authority is given to the Court to direct the trustee to come in again and disclose, as he makes progress in the business entrusted to him. Cases of the kind are so common, that if the statute had contemplated giving such authority, it would have been clearly expressed.

The counsel cited and commented on the cases of *Arnold* v. *Elwell,* 13 Maine, 261; *Sayward* v. *Drew,* 6 Maine, 263; *Foster* v. *Libbey,* 24 Maine, 448.

In R. S., 1857, c. 86, § 36, it is provided that any *legacy due* from an executor, or goods in his hands, may be attached on trustee process. A legacy "due," is one due now, one that can be defined, stated and sworn to by the trustee, and which he can be called upon to pay. The word "due" qualifies the liability, or it is surplusage. The manifest intention of the Legislature was to make the executor liable when he had settled his account, and the legacy thereby became due, or when the legacy was a specified sum payable in a designated time. In either of these cases, the legacy would be due, and could be sued for.

In the case at bar, no legacy was given to the defendant. At the time of the attachment, it could hardly be said that any thing was given to him by the will; sundry legacies were given, and after all these, debts, administration expenses, and other appropriations were satisfied, if any thing was left, he was to have half of it. Could it be said that any thing was due to him "absolutely"?

Cutter *v.* Perkins.

The counsel proceeded to comment upon the recent Massachusetts cases, *Holbrook* v. *Waters,* 19 Pick., 354; *Wheeler* v. *Bowen,* 20 Pick., 563; *Boston Bank* v. *Minot,* 3 Met., 507; and contended that the principles decided were not warranted by law, nor authorized by judicial prerogative, being a departure from the plain intent of the statute of that State, which is similar to that of this State.

These decisions not being sustained by principle or judicial precedents, should not be followed by the Court here. Was any thing due to Perkins from the executor *absolutely* and *without any contingency?* Did not his liability depend upon the question whether there would be any thing to pay to Perkins? If due *"absolutely,"* his legal representatives, in case of his death, would be bound to pay it; and he would remain personally responsible, even after being removed from his trust, or if the property had been consumed by fire. If due *"absolutely"* and without *"contingency,"* there would be no escape for him. A claim with these elements must have in it something specific, tangible, and that can be estimated. But who, at that time, could determine what the liability was? Suppose the trustee had said he was ready to pay, who could have calculated the amount he was to pay, or say whether it should be one dollar, a thousand dollars, or, indeed, any thing? By good fortune, there is a balance in the executor's hands; but a financial change, about the time of the sale, might have reduced it to a cypher.

The statute says there shall be no *"contingency."* Will the Court step in and determine that *"no contingency"* means a certain class of contingencies, and does *not* mean a certain other class?

The embarrassing position in which a process of this kind places an executor is an argument against adopting the principles of the late Massachusetts decisions. The argument *ad inconvenienti* is entitled to weight. Why should a stranger be permitted to interfere and arrest the executor in the discharge of his duties, compel him to become a party to a troublesome and expensive suit, and to defend against the

claim of a foreign, unknown plaintiff, without the power to submit to a default, unless at his own risk?

This Court has repeatedly decided that a trustee is not chargeable where he does not owe the defendant absolutely. *Clark* v. *Viles,* 32 Maine, 32; *Butman* v. *Hobbs,* 35 Maine, 227; *Wilson* v. *Wood,* 34 Maine, 123; *Williams* v. *And. & Ken. Railroad Co.,* 36 Maine, 301; *Plummer* v. *Rundlet,* 42 Maine, 365.

*J. Dane,* for the plaintiffs.

The trustee was charged upon his disclosure and facts admitted, and thereupon excepted to mere adjudication.

The plaintiffs recovered a verdict against the principal defendant at the same term at which the executor completed his disclosure. In that disclosure, he admits that he held $1663,92, *belonging to the principal defendant,* and was ready to distribute and pay according to the provisions of the will. It is also admitted that the principal defendant is one of the two sons of the testator's sister, spoken of in the will.

The creditors summoned the executor as a trustee, upon the ground that the defendant had *a legacy* in his hands. R. S., 1841, c. 119, § 43. The action, having been duly entered, was continued from term to term, to await the result of a trial against the principal defendant, the settlement of the estate of the deceased, and the executor's final disclosure as to what sum would belong to the defendant, and which the creditors claimed to hold.

The lien created by the service of the writ upon such executor attached not only to money he then held, but to all such funds as *subsequently* came into his hands before final disclosure, belonging to the defendant. *Boston Bank* v. *Minot,* 3 Met., 507; *Holbrook* v. *Waters,* 19 Pick., 354; *Wheeler* v. *Bowen,* 20 Pick., 563; *Kimball* v. *Woodman,* 19 Maine, 203.

The creditors are entitled to reach the sum admitted to belong to the defendant upon the ground that it is a legacy. By the 10th clause of the will, the testator gives "what remains to the two sons of said sister Eunice." Under this

clause, there can be no question that the said sons take *a legacy*. That they do not take the real estate as a *devise*, and the *personal* only as *a legacy*, is shown by the following clause of the will:—"I *direct* my executor to sell and convey *all my real* and personal estate, *for the purpose* of paying off all said legacies and *the balance* according to said *residuary clause*."

The 10th clause contains the only residuary clause. The two sons were to have what remained. In other words, to have the balance *remaining in the hands of the executor*, after selling the real estate and discharging all claims. The sale was not simply discretionary with the executor, but imperative. The executor has exercised the power of sale, and has converted the real estate into money; and there is now no reason why he should not be charged as trustee.

The attention of the Court is called to the words in the new R. S., "the amount for which he is chargeable shall be fixed by the Court;" with the request, that such sum may now be fixed, if proper, and if the Court are of opinion that the trustee should be charged.

The opinion of the Court was drawn up by

TENNEY, C. J.—The trustee has presented a very elaborate argument, to convince the Court that he cannot be holden in his capacity of executor, as the trustee of the principal defendant, and that the opinions of courts, holding different views in their decisions, are not the law of the State.

It is hardly to be expected that we should enter into a minute analysis of the extended argument, notwithstanding it exhibits great research and ingenuity, and some of its criticisms of the reasoning of Judges, in opinions cited, may be just. And we do not regard it as essential to a correct decision of the case before us that we should do this.

"Any debt or legacy due from an executor or administrator, and any goods, effects or credits in his hands as such, may be attached by the process of foreign attachment." "No person shall be adjudged trustee"—"by reason of any money

or other thing due from him to the principal defendant, unless it is, at the time of the service of the writ upon him, due absolutely and without depending upon any contingency." R. S. of 1841, c. 119, § § 43 and 63.

The result of this case must depend upon the correct construction of the provisions just referred to. And the true construction of the latter part of § 63, as quoted, is the matter only which is now in controversy. But the trustee insists that, upon a proper construction of that clause, the Court should have decided upon the question, whether he could or could not be holden as trustee, in his representative capacity, at the term when he made and swore to his disclosure, from which it appears that he had not, at the time of the service of the writ upon him, in his hands, any goods, effects or credits of the principal defendant; and that the continuance of the case, and allowing further disclosures, was unauthorized; and these further disclosures, and other evidence introduced, should not be considered by the Court, in determining the question whether he should be adjudged trustee, or otherwise.

It is quite obvious, that there are cases, where justice and the manifest purposes, intended by the provisions of the statute, in relation to foreign attachment, would fail, if this principle contended for should be rigidly applied. As an example, two suits are instituted under this statute, in favor of different persons, but against the same principal defendant and trustee, and service made on the trustee at different times. At the first term, the trustee makes disclosure in both, upon an examination of the plaintiffs. In the one, when service was first made, he discloses that he had money and credits in his hands, at the time of the service, to a certain amount, which does not exceed the amount of the claim on which the suit is brought, and makes oath to his disclosure. In the other case, he discloses as before, and adds that he had been previously served with the other process, and had made therein a similar disclosure. On these facts, he can be charged in the suit in which service was first made;

but he cannot with propriety be charged in the other, for the reason that the whole fund in his hands may be absorbed in the payment of the judgment which may be obtained in the first action upon the execution which may issue thereon. He cannot properly be discharged in the second suit, because the plaintiff in the first may recover no judgment against the principal; or, if he should, it may be for a sum much less than his claim; or he may never cause demand to be legally made in order to hold him; and the discharge would be unjust to the plaintiff in the last suit, if he should obtain judgment. And, in such cases, it is the practice to continue the suit in which the service is last made, in order that the trustee may disclose further a state of facts, which will probably take place afterwards in relation to the suits, as between the plaintiffs and principal defendant, and in relation to the proceedings in the former, touching the collection of the judgment which may be obtained thereon.

This practice has the sanction of authority upon argument and mature consideration by the Court, when it is apparent that a full disclosure of the trustee, as to his liability and the extent thereof, cannot be determined on his first disclosure; and when the object of the statute cannot be otherwise secured. *N. E. Marine Ins. Co.*, v. *Chandler and trustee*, 16 Mass., 275.

Cases are contemplated by the statute, when such delay may ordinarily be necessary. An example of this is, when the plaintiff or trustee may allege and prove any other facts, not stated or denied by the supposed trustee, which may be material in deciding the question whether the trustee shall be charged or not. R. S., of 1841, c. 119, § 33; *Pease* v. *McKusick and trustee*, 25 Maine, 75. It is provided, also, that, on *scire facias*, if the supposed trustee had been examined in the original suit, the Court may permit or require him to be examined under § 79. And, if this can be done at so late a stage in the proceedings, it would seem that it might be done at an earlier stage.

We do not understand the trustee to deny that the Court

have the power to allow a continuance of the cause, that the trustee may disclose further in certain cases; but in this he insists that, for the purposes designed, it cannot properly be done, because the additional disclosures are of facts which the Court cannot consider, and the delay is unnecessary. But the power to allow the delay is certainly discretionary, and is not subject to exceptions.

We come to the principal question, what is the true construction to be given to the language relied upon, " due absolutely, and without depending on any contingency?" The term " due," we do not understand the trustee contends has the same signification as the word " payable," because the same chapter provides that money, &c., is due absolutely and without any contingency, notwithstanding the time of payment had not arrived, when service was made of the process upon the trustee. Same chapter, § 67.

The words of the statute which we are considering were evidently intended to express the positive and the negative idea, entertained by the authors of the statute. The latter part was designed to give the signification of the words " due absolutely."

The adjective term " due," as used in the statute, has reference to a *debt*, or something in the nature of an obligation to discharge, resting upon some one, in favor of another. And this debt or obligation, to come within the meaning of this provision of the statute, must not depend upon any contingency, but must be free therefrom; that is, " absolute" or unconditional. From this, it follows that " the money or other thing due," in order to be reached by this process, must be something which is not a contingent debt or obligation. And it becomes proper to ascertain, so far as we are able, what is properly denominated, in law, a contingent debt.

The case of *Woodard* v. *Herbert*, 24 Maine, 358, was where a suit was brought against the defendants on a bond, dated Nov. 2, 1841, given by Herbert as principal and French as surety, to procure a release of Herbert from arrest on *mesne process*, in favor of the plaintiff against him, commenced on

May 6, 1843. French had filed his petition in bankruptcy on Feb. 25, 1842, and was duly declared a bankrupt on the fifth day of April following, and obtained his certificate of discharge on January 30, 1844. The plaintiff recovered judgment in the original suit against Herbert, in January, 1843. Herbert failed to give notice of his intention to disclose, according to the provision of the statute, and his bond was forfeited. The defence to the suit upon the bond given by Herbert and French was the discharge of French in bankruptcy.

It was provided by § 5, of the bankrupt Act of 1841, that persons having uncertain or contingent demands, against such bankrupt, shall be permitted to come in and prove such debts under the Act. And the question was, whether the claim in the bond was of this description. In the opinion of the Court, by SHEPLEY, J., the question is asked, "had the plaintiff any actual demand of a contingent character against French at the time when he was declared to be a bankrupt?" The answer given is, "the bond was made according to the provisions of the statute, c. 148, § 17, conditioned that the principal should, within fifteen days, &c., notify the creditor for the purpose of disclosure and examination. The plaintiff had not then recovered judgment against the principal. It was uncertain whether he would be able to recover any judgment. And if he did, it was entirely uncertain whether the principal would not notify him and make a disclosure, and thus perform the condition of the bond. It was, therefore, doubly uncertain whether there ever would be any claim or demand against French upon that bond." "It is necessary to distinguish between a contingent demand, and a contingency whether there ever will be a demand. This distinction may be illustrated by the case of a bond, made to liberate a poor debtor from arrest on execution. In such case the existence and amount of the debt has been ascertained by a judgment. The surety in the bond obliges himself to pay it, if the principal does not, or does not surrender himself to the prison keeper, or does not procure his discharge

by taking the poor debtor's oath. The obligation is to pay the debt or demand, upon these contingencies. The debt is a contingent debt, and can be proved against the bankrupt. Not so, in the case of a bond made to release from arrest on *mesne process.*" The obligors in the bond were held liable.

Another class of debts, which are treated as contingent, is referred to in R. S., 1841, c. 109, §§ 13, 14, 15, and 16, in probate proceedings; providing that "any person liable as surety for the deceased, or having any other contingent claim, may exhibit the same," &c. Where a debt exists against a principal and surety, wherein the latter may become the creditor of the former; and, if the principal should die insolvent, as the estate must be settled, the surety can file his claim before commissioners of insolvency, and have it allowed, and a part of the assets is set apart for the payment of a dividend thereon; but, as between the principal and surety, while living, the surety cannot become the creditor of the principal, unless he pay the debt, after its maturity, or cause the principal to be discharged, by assuming the debt absolutely himself, by giving new security. *Ingalls* v. *Dennett,* 6 Greenl., 79.

The case of *Dwinel* v. *Stone,* 30 Maine, 384, was *scire facias,* wherein the defendant disclosed, he having been defaulted in the original suit against him, as the trustee of the principal defendant therein, that he had certain logs in his custody, which he was to sell, and the avails would belong to the principal, after certain claims against the logs should be discharged; that, when he was served with the original process, no sale or settlement had been made between him and the principal defendant; that he afterwards made a settlement by which the principal surrendered all his rights without compensation. It was contended, in defence, that the interest of the principal was contingent at the time of the service of the trustee writ upon the trustee, and, therefore, that he could not be holden. SHEPLEY, J., in delivering the opinion of the Court, says,—" The statute requires that something should be 'due absolutely and without depending upon

any contingency.' " The contingency referred to in the statute, and in the decided cases, is not a contingency, which may often exist before a settlement of an account, or other business transaction, whether any thing may be found due from the trustee to the principal, who has an absolute right to call upon the trustee to render the account and make the settlement; but is a contingency which may prevent the principal from having any claim whatever, or right to call the trustee to account, or settle with him. When the service was made upon the trustee, there had been no settlement made between him and the principal. He afterwards made one by which the principal surrendered all his rights without compensation. Such a settlement can have no effect. The trustee states that the logs had not been sold, and there was then nothing due from him. But he was not authorized to make a valuation of them himself, and to declare that nothing was due. It was his duty to close the whole business, by a sale of the logs, and a settlement of all claims upon them, and to make a division of the surplus. If he omitted to do so, as soon as he might have done, that cannot excuse him from accounting when it was done." And the exceptions taken to the judgment of the Court, charging the trustee, were. overruled. The doctrine of this case is, that where property is put into the hands of the trustee by the principal defendant, to be sold, and, after the sale, an adjustment of accounts alone is necessary to determine whether the trustee has goods, effects or credits in his hands belonging to the principal, and the right exists with the latter to call upon the trustee to render an account and make the settlement, and thereupon something is found due from the trustee, that debt is absolute and does not depend upon any contingency, as well before the sale and settlement as afterwards,—and that the trustee is. bound to make such sale, settlement and adjustment, after the service made upon him, if not done before; and, if any thing is in his hands as determined by that settlement, he is holden as trustee. The same criterion of a contingent demand is applied in the case of *Wilson and Wood*, 34 Maine, 123, in

which the Court says, — " The contingency named in the statute is one which may prevent the principal from having any claim upon the trustee, or right to call him to account."

The principle of the two cases last cited is not *new* in Massachusetts. It was distinctly enunciated in *N. E. Marine Ins. Co.* v. *Chandler & trustee*, in the 16th vol. of Mass. Reports, before cited, so far, that when a person is made the agent of another, to dispose of certain effects, and, from the avails, to discharge certain specified claims against the latter, if a surplus should remain unappropriated, it may be reached in the process of foreign attachment. And, if the trust, assumed by the agent, has not been fully executed at the time of the service of the trustee process upon him, nor when he makes his first disclosure, the action must be continued, that the same may be completed, by selling the property and paying the debt to be paid by the agent, according to the terms of the trust, and, after that, it may be known for what sum the trustee is to be charged in process of foreign attachment.

With the decisions, and the reasoning of the Court therein, of the cases referred to, from 16 Mass. and the 30th and 34th of Maine, we are satisfied, and, as applied to cases where similar questions may arise upon transactions which have taken place since January 1, 1858, and which may hereafter arise under existing laws, these decisions have been adopted by the Legislature in the R. S. of 1857, by reënacting the statute of 1841, c. 119, § 63, in the revision of 1857, c. 86, § 55. *Starks* v. *New Sharon*, 39 Maine, 368. But this adoption will not embrace this case, as it falls under the provisions of the repealing Act of the former statute, as contained in § 2, of the R. S., of 1857. Yet it shows that the construction of the Court was satisfactory.

The testator, in his will, provided that all his just debts and funeral and administration expenses should be paid. He directed his executor to cause to be erected, around the graves of his father and grandfather and their wives, a granite fence, at an expense of one hundred and fifty dollars, and a marble monument within, in such style, &c., for them and

Cutter *v.* Perkins.

himself, as he should think appropriate, at an expense of the the same amount. He made certain devises of real estate in fee simple, to individuals named. He gave particular legacies to the amount of $1300. He gave to his sister Eunice Perkins two-fifth parts of all his estate, which might remain, after paying all debts, administration expenses, and the burying yard appropriations. After all other legacies and devises mentioned in the will should be paid and satisfied, what should remain, he gave to the two sons of his sister Eunice Perkins, one of whom is the principal defendant in the original suit. It is provided in the will, if the estate should fail from any cause to satisfy all said legacies, each bequest is to contribute proportionally to the deficiency, and, excepting those lots of real estate which were devised in the will, the testator therein directed his executor to sell and convey all his real and personal estate for the purpose of paying all said legacies, and the balance according to said residuary clause.

The design of the testator, in his will, cannot be mistaken. He made therein no devise of real estate, excepting to George W. Wallingford one acre; to Q. A. Swan, two acres, and to Edward E. Bourne, about four acres of land in fee simple. But all his estate was to be converted into money, and the bounty intended as specified in the will was to be paid therefrom, and is properly denominated legacies.

The personal property and real estate, after excepting the particular devises, was that from which, on sale and conveyance thereof, the funds were provided to pay the debts, funeral and administration expenses, grave yard appropriations and the legacies. For this purpose, all was in the hands of the executor absolutely, and not depending upon any contingency. If he had died, resigned, been removed, or in any manner had ceased to be executor, an administrator with the will annexed would have been appointed to administer the estate so far as the executor had omitted to complete the administration, and he would possess the same power for such purposes, as that which the executor had.

Whether there would be any thing remaining for the residuary legatees, was to be determined by the result of the sales, and the settlement generally of the estate of the testator. The fact that a part of the fund, with which to make payment of debts, &c., was to be acquired from the sale of real estate, placed the residuary legatees in no different relation to the executor, from that which they would have held if all the testator's estate had been personal property. It was in his hands, and he was bound to dispose of it as he would a ship or merchandize, and apply the avails according to the provisions of the will. All this and the personal property was in his possession at the time of the service of the trustee process upon him. And when as specie it was changed into money, it was neither more nor less in his possession. By the process of change, and the settlement of the estate, he was able to determine whether those named as residuary legatees were entitled to any thing from the testator's estate, and, if so, how much. Being named in the will, as they were, they had a right to call upon the trustee to render his account in probate and make the settlement, and this, notwithstanding it might in the end turn out that the estate was all absorbed, without leaving any thing for them. The trustee's obligations to do this, in the discharge of his trust as executor, were just as strong and binding as they would have been, if, in his first disclosure, he had stated the value of the property in his hands, and had admitted that this would exceed the sum necessary to pay all expenses, appropriations and legacies, excepting that contained in the residuary clause. This admission would not be the test, and he could not with propriety be charged on such admission; he had not executed the trust devolved upon him as executor, and, to enable him to do so, the action was continued as a matter of necessity. And, as it turned out, on the sales, that a residue was found in his hands, for the testator's two nephews named in the will, this was substantially in his hands and possession when he was served with the process,

as much as though the sales and conveyances had all taken place, and the avails been received before the service was made. *Exceptions overruled.*

RICE, APPLETON, GOODENOW, DAVIS, and KENT, JJ., concurred.