DOLENTY, APPELLANT, v. ROCKY MOUNTAIN BELL TELEPHONE CO., RESPONDENT.

(No. 2,806.)

(Submitted April 4, 1910. Decided April 18, 1910.)

[108 Pac. 912.]

*Garnishment—Payment of Claims by Garnishee—Delay—Unauthorized Payment—Uncertainty of Amount of Debt—Liability of Garnishee—Counterclaim—Pleading.*

Garnishment—Rights of Garnishee—Payment of Claims.
1. Where the buyer of certain property had, as per agreement between the parties, retained a part of the purchase price with which to pay outstanding liens, and did pay full value for certain of the claims, it was subsequently, when sued as garnishee, properly given credit for the full amount of such claims, though the claimants received only a portion of the sums due, the evidence being silent as to who received the balance.

Same—Payment of Claims by Garnishee—Delay.
2. The garnishee mentioned in the foregoing paragraph, having permitted a judgment foreclosing one of the liens which it had agreed to pay out of the purchase money retained by it, to remain unpaid for nearly a year after rendition, was only entitled to credit for the amount of the judgment, and not to the costs, expenses and interest due to delay in paying the claim; if it had any excuse for not making payment before, the burden was upon it to show that it was entitled to credit in a greater amount.

Same—Pleadings—Counterclaim.
3. In a suit against a garnishee by the attaching creditor, the former cannot assert a counterclaim under a general denial of indebtedness; to make it available, such counterclaim must be specially pleaded.

Same—Pleading—Bill of Particulars.
4. The furnishing of a bill of particulars in which a garnishee had listed a claim as a setoff against the attaching creditor's demand did not constitute a pleading of a counterclaim.

Same—Unauthorized Payment of Claims by Garnishee.
5. At the time of the sale of a telegraph and telephone plant the parties stipulated that the sum of $20,000 should be deposited in a bank, said sum to be by the bank applied to the payment of the seller's outstanding bonds, the latter to pay all expenses incident to their redemption. It was also provided that the buyer should retain a certain amount of the purchase price for the purpose of paying off a number of liens on the property. *Held,* in a suit by an attaching creditor against the buyer, as garnishee, that the garnishee was not entitled to an allowance for expenses in discharging the bonds, but that the authority to pay the $20,000 for the purpose indicated was an implied prohibition against the expenditure of any greater amount.

Same.
6. Evidence *held* insufficient to support a finding that under a parol agreement, made immediately subsequent to the contract relative to

the payment of outstanding liens (mentioned in the above paragraphs), the garnishee was entitled to credit for amounts paid in satisfaction of claims which were not liens against the property bought by it.

Same—Uncertainty of Amount of Debt.

7.   While a garnishee is not chargeable on a contingent liability or a conditional contract merely, he may be held if his liability is certain, and the only uncertainty which exists is as to the amount thereof.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

Action by W. B. Dolenty against the Rocky Mountain Bell Telephone Company. Judgment for defendant, and plaintiff appeals from it and an order denying a new trial. Reversed and remanded.

*Messrs. Walsh & Nolan,* and *Messrs. Miller & O'Connor,* submitted a brief in behalf of Appellant.   *Mr. T. J. Walsh* argued the cause orally.

It is conceded that an obligation cannot be garnished until it has accrued; the profits to arise under a contract not yet performed are not subject to garnishment. But when the contract is completed, when everything required to be done to entitle the obligee to his money has been done, but by agreement the payment is simply deferred, the amount owing is subject to levy. If one hires out by the month, his wages for the month are not subject to garnishment until he has earned them; but when he has earned them, they are so subject, even though by express agreement or through custom pay-day has not yet arrived and the amount is not, accordingly, due when the levy is made. (*Telles* v. *Lynde,* 47 Fed. 912; *Cross* v. *Brown,* 19 R. I. 220, 33 Atl. 147; 14 Am. & Eng. Ency. of Law, 758; *Cowell* v. *May,* 26 Mont. 163, 66 Pac. 843.)

The statute (Revised Codes, sec. 6667) in no manner intimates that the debt must be "due"; the liability attaches if the debt is "owing." Although the former term is exceedingly elastic in meaning, signifying sometimes, perhaps usually, presently payable, the latter term characterizes all accrued obliga-

tions whether presently payable or payable in the future.  (10 Am. & Eng. Ency. of Law, 277.)    The difference in the meaning of these two words, when there is a difference, was pointed out by Justice Story in the opinion in *United States* v. *State Bank,* 6 Pet. 29, 8 L. Ed. 308, considering a statute giving, in the distribution of estates, a priority to any "debt due to the United States."  The court held the word "due" in the statute under consideration synonymous with "owing."  The term "owing" applies as well to unmatured as to matured claims.  (*Coquard* v. *Bank of Kansas City,* 12 Mo. App. 261; *Musselman* v. *Wise,* 84 Ind. 248.)    And so "a debt is no less a debt because it has not yet matured, if it will certainly become payable in the future."  (9 Am. & Eng. Ency. of Law, 977; *Davenport* v. *Kleinschmidt,* 6 Mont. 502, 13 Pac. 249.) The rule that debts "owing" though not "due" are subject to garnishment is asserted in the following recent cases: *Smith* v. *Marker,* 154 Fed. 838, 85 C. C. A. 372; *Marble Falls* v. *Spitler,* 7 Tex. Civ. App. 82, 25 S. W. 985; *Lancashire Ins. Co.* v. *Corbett,* 62 Ill. App. 236.  If the amount owing is susceptible of ascertainment by some standard referable to the contract itself, it becomes sufficiently certain to be reached by garnishment.  (14 Am. & Eng. Ency. of Law, 764, 769; *Jaques* v. *Carstarphen W. Co.,* 131 Ga. 1, 62 S. E. 82; *Cutter* v. *Perkins,* 47 Me. 557; *Thorndike* v. *De Wolfe,* 6 Pick. 120; *Downer* v. *Topliff,* 19 Vt. 399.)

In behalf of Respondent, there was a brief by *Messrs. McIntire & McIntire,* and oral argument by *Mr. H. G. McIntire.*

When one is sued as garnishee, the plaintiff, in the absence of fraud, has no greater rights than his debtor, and is subject to the same defenses that might be interposed by such garnishee had a suit been begun against him by his creditor. In other words, the garnishing or attaching creditor stands in the shoes of his debtor.  (*Board etc. School Dist. No. 1* v. *Whalen,* 17 Mont. 1, 41 Pac. 849; Waples on Garnishment, p.

209; *Walling* v. *Miller,* 15 Cal. 38, 7 Morr. Min. Rep. 165; *Aultman* v. *McConnell,* 34 Fed. 724.) And where chattels are sold, and the purchaser agrees to pay the balance of the consideration after the claims of third persons against the seller have been settled, he is not liable, in garnishment proceedings, to a creditor of the seller until the amount of such claims is ascertainable. (*Durling* v. *Peck,* 41 Minn. 317, 43 N. W. 65; *Mundt* v. *Shabow,* 120 Wis. 303, 97 N. W. 897; see, also, Drake on Attachments, 6th ed., secs. 517 *et seq.,* and secs. 593 *et seq.; Oppenheimer* v. *Bank,* 20 Mont. 192, 50 Pac. 419.) Whatever defense a garnishee could urge against an action by defendant for the debt in respect to which he is garnished, he may set up in bar of judgment against him as garnishee. (Drake on Attachments, 6th ed., sec. 672; *Rock Island Lumber Co.* v. *Trust Co.,* 54 Kan. 124, 37 Pac. 983; see, also, *Cowell* v. *May,* 26 Mont. 163, 66 Pac. 843.) Since, to render one liable to garnishment, his indebtedness must be due as a money demand, unaffected by liens or prior encumbrances or conditions of contract, one holding property as an indemnity for his conditional liability, whether by mortgage or pledge, is not subject to garnishment. (*Zeltman* v. *Bank,* 67 Mo. App. 672; *Tabor* v. *Bank,* 35 Colo. 1, 83 Pac. 1060, and cases cited.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On June 14, 1905, this plaintiff commenced an action in the district court of Park county against the Yellowstone Park Telephone and Telegraph Company (hereinafter referred to as the Park Company), and Frank A. Hall, to recover $4,982, with attorney's fees and costs, on a contract for the direct payment of money. A writ of attachment was issued, and on June 26 served upon the Rocky Mountain Bell Telephone Company (hereafter referred to as the Bell Company), as garnishee. Such further proceedings were had in the action that on February 8, 1906, a judgment in favor of plaintiff and

against the Park Company and Hall was duly given and made for $8,405.26 and costs. Upon this judgment execution was issued and placed in the hands of the sheriff of Park county, who thereupon demanded of the Bell Company that it pay over to him all sums of money owing by it to the Park Company or Hall. The Bell Company having failed and refused to pay over any sum, this action was brought by the judgment plaintiff against the Bell Company as garnishee. The complaint in this action, after setting forth the foregoing facts, which are admitted to be true, further alleges that, at all the times since the commencement of the action of Dolenty against the Park Company and Hall, the Bell Company has been indebted to the Park Company in the sum of $5,000, for which amount judgment is demanded. The amended answer denies any indebtedness to the Park Company, and alleges that, prior to the levy of the writ of attachment, the Bell Company had purchased from the Park Company certain property, and that the parties agreed that the Bell Company should pay $20,000 of the purchase price in the discharge of a certain mortgage then upon the property purchased, and that the further sum of $5,000 should be withheld by the Bell Company to be applied by it to the payment of certain other debts and liabilities of the Park Company, not including the claim of this plaintiff, and that such debts and liabilities exceed the sum of $5,000. These affirmative allegations were put in issue by reply. The cause was tried to the court without a jury. Findings of fact and conclusions of law were made, and judgment entered in favor of the defendant, from which judgment, and an order denying him a new trial, plaintiff appealed.

There is not any conflict in the evidence. Before trial the plaintiff demanded a bill of particulars which would show the debts and liabilities of the Park Company, to pay which the $5,000 was withheld by the defendant. In compliance with this demand, a bill of particulars was furnished, the items of which are as follows:

1. Lien Claim of Bronson ........................$  182 45
2.   "     "     "  Cory ..........................  139 00
3.   "     "     "  Miller .......................  150 00
4.   "     "     "  Montana Electric Company...... 2,109 40
5.   "     "     "  Enoch ........................   82 50
6.   "     "     "  Ludwigson ....................  207 50
7.   "     "     "  Montana L. & Mfg. Company.....  479 72
8.   "     "     "  Rickman ......................   23 90

9. Claim of Rocky Mt. Bell Tel. Co................  394 71
10. Expense redeeming Bonds......................  587 36
11. Claim of Chicago Tel. Co.....................  543 44
12.   "     "  John Walsh ........................   56 65
13.   "     "  Thompson Falls Merc. Co............  459 00
14.   "     "  Ludwigson .........................  101 70
15.   "     "  Miles .............................   46 25
16.   "     "  Turners ...........................   34 65
17.   "     "  Fransham ..........................   51 00

   Total ....................................$5,649 23

The evidence discloses that on June 23, 1905, the Bell Company purchased from the Park Company certain telephone and telegraph lines, and the instruments, easements and fixtures used in connection therewith, for the sum of $25,000; and at the same time the parties entered into a contract in writing, by the terms of which it was agreed that $20,000 of the purchase price should be deposited with the American Trust and Savings Bank, of Chicago, to be by that bank applied to the payment of certain bonds of the Park Company, then outstanding and secured by trust deed or mortgage. The Park Company agreed to have the trust deed or mortgage satisfied of record, and "to pay all costs and charges by way of premiums or otherwise of redeeming said outstanding bonds and satisfying said mortgage." The contract further provides: "The balance of said purchase price, to-wit, $5,000.00 shall be paid by the party of the second part [Bell Company] and by it ap-

plied to the payment of any and all liens, claims, or judgments: which are or may be encumbrances upon the property herein agreed to be sold, and if, after all said liens, claims or judgments shall have been paid, there shall remain any balance of said sum of $5,000, the party of the second part agrees to pay such balance to the party of the first part [Park Company]. It is the purpose, spirit, and intention of the parties hereto by these presents that the property hereinabove mentioned is: to be sold and delivered by the party of the first part to the party of the second part for the said sum of $25,000.00, free and clear of all liens, charges, and encumbrances." Provision is then made for an indemnity bond, and for the transfer of the immediate possession of the property to the Bell Company, and these last provisions were carried into effect.

The defendant having admitted the possession of the $5,000, the plaintiff, to make out a *prima facie* case, introduced evidence showing the claims outstanding against the Park Company which were encumbrances upon the property, and that but $50 had been paid in satisfaction of the Bronson claim, and but $70 in satisfaction of the Enoch claim, and rested. The defendants then introduced evidence showing: That it had paid full value in satisfaction of the Bronson and Enoch claims, and that it had paid $2,109.40 in satisfaction of the claim of the Montana Electric Company; that it had paid $461.40 as expenses incident to the discharge of the outstanding bonds of the Park Company; that it had retained $394.71 in satisfaction of a claim which it had against the Park Company; and further that in July, 1905, Frank A. Hall, president of the Park Company, had authorized it to pay out of the $5,000 the following claims: Chicago Telephone Company, John Walsh, Thompson Falls Mercantile Company, A. Ludwigson, A. W. Miles, Pauline and Lillian Turner, and W. J. Fransham, and that the balance of the $5,000 was retained by it to discharge these claims, or so much thereof as such balance would pay.

The trial court found that the claims which were encumbrances against the property aggregated $3,374.47; that the.

claim of the defendant company for $394.71 was a valid setoff; and that, to pay the outstanding bonds of the Park Company, the Bell Company was compelled to incur an additional expense of $461.41; and that this last-mentioned sum and the aggregate amount of the lien claims were covered by the written contract of June 23. In its finding No. 8 the court found that by an agreement between the Park Company and the Bell Company it was further provided that the Park Company should furnish to the Bell Company a list of other claims then owing by the Park Company, which should also be paid out of this $5,000, and that such list was furnished, the claims therein scheduled amounting to $1,504.80, and of these the claims of the Chicago Telephone Company, Ludwigson, Thompson Falls Mercantile Company, the Turners, and Fransham were intended to be paid "under and by virtue of said contract of June 23, 1905"; and that, after paying the first ten claims mentioned in the bill of particulars, the Bell Company should pay the claims listed by Hall in July, 1905, as shown above; and finally the court found that the Bell Company was not indebted to the Park Company at the time of the levy of the writ of attachment, or thereafter, in any amount whatever. From these findings the court concluded that the defendant company was not liable to plaintiff, and rendered and entered judgment in its behalf.

1. The claims scheduled in the bill of particulars fall into two groups; the first eight claims comprising the first group. Every claim of that group was a lien upon the property for some amount, and of those claims only three are contested by plaintiff. It is contended that the claim of Bronson was discharged for $50, and the claim of Enoch for $70, and such appears to be the fact; that is to say, Bronson received only $50 for his claim, and Enoch only $70 for his. But it does satisfactorily appear that the Bell Company was compelled to pay full value for each. Someone profited by the transaction, but the record is so meager that we are unable to determine the real facts; and, since the defendant company parted with its

money in order to release the property from these liens, we think it should be given credit for the full amount paid by it on each of these two claims.

Claim No. 4, of the first group, presents some complications. On October 1, 1904, the Montana Electric Company filed its claim against the property of the Park Company for $1,463.80. On May 4, 1905, it commenced a suit to foreclose, claiming the principal sum with interest, costs and attorney's fees for fore-closure. On July 18, 1905, it recovered judgment for $1,585, together with costs, taxed at $28, and an attorney's fee of $300, a total of $1,913. Upon this judgment execution or order of sale was issued, and the property of the Park Company sold to the Montana Electric Company for $1,977.54. On May 5, 1906, the Bell Company satisfied this judgment by the payment of $2,109.40. With respect to the payment of this claim, P. R. Ferguson, the auditor of the Bell Company and a witness in its behalf, testified: ''I do not know why we did not pay that judgment as soon as it was entered. I do not know why we allowed it to go into judgment at all and didn't pay it im-mediately after the 23d of June, 1905.'' This is the only evi-dence in the record touching the payment of this claim. When we recall that the Bell Company purchased the property from the Park Company on June 23, 1905, and retained the money to pay these claims, its delay in discharging this particular claim for nearly eleven months, during which time costs, ex-penses, and interest were permitted to accumulate, is wholly inexcusable. To permit it now to be credited with the $2,109.40 which it paid for the redemption of this claim, in May, 1906, in the absence of any excuse whatever for the delay, would be tantamount to saying that it might have deferred payment of all of these lien claims until by the accumulation of costs and expenses they consumed the entire $5,000. But that was not the intention of the parties to the contract, and as against the claim of an attachment creditor it could not be done. The pendency of this action was not any excuse for the delay. The Bell Company was obligated to pay the lien claims, of which

this was one. There is not anything in the record that would justify a court in crediting the Bell Company with more than the face of the judgment, $1,913.

In the brief of respondent it is suggested that the appellant did not prove that the entire $2,109.40 was not properly allowed; but, as we said above, the plaintiff made out his *prima facie* case by the admission of the defendant that it had the $5,000 in its possession and by showing the amount of the claims which were encumbrances on the property; and as to this particular claim he showed the amount of it and that foreclosure suit had been brought; in other words, that an amount substantially the same as the face of the judgment was necessary to discharge it. Having made this showing, it is not imposing any hardship upon the defendant to require it to assume the burden of showing that it was entitled to credit in a greater amount, since the facts constituting its excuse for the delay in making payment were peculiarly within its own knowledge. Under the evidence the defendant is entitled to credit for each claim of the first group as returned in the bill of particulars, except that the claim of the Montana Electric Company should be limited to $1,913, the amount of the judgment.

2. The second group embraces the remaining nine claims, listed in the bill of particulars. The first of these is the claim of this defendant, for $394.71. This was for telephone services furnished by the Bell Company to the Park Company, and was not a lienable claim. It was not reduced to judgment prior to the date of the levy of the writ and was not an encumbrance upon the property of the Park Company. But it is insisted that it constitutes a valid setoff against a claim by the Park Company for the balance of the $5,000, and, since the plaintiff as attaching creditor virtually stepped into the shoes of the Park Company, it can be asserted against this plaintiff. A setoff, as such, is not recognized by our Codes, and this is an action at law. It is true, as against a claim of the Park Company, this defendant could have asserted its demand as a counterclaim, if it had pleaded it; otherwise it could

not have done so. This is elementary. The amended answer in this action denies generally any indebtedness by the Bell Company to the Park Company at the time of the service of the writ of attachment, or subsequently, but does not set forth any counter-demand and ask to be permitted to retain a sum sufficient to discharge it. It cannot be disputed that any defense which the Bell Company could interpose as against an action by the Park Company for the balance of the $5,000 it can now interpose as garnishee in an action by the attaching creditor (30 Cyc. 1073) ; but the rule which requires it to plead a counterclaim as against the Park Company likewise requires it to plead such counterclaim in an action against it as garnishee, at the suit of the attaching creditor, and it cannot assert such counterclaim under a general denial of indebtedness. (9 Ency. of Pl. & Pr. 835, and note; 14 Am. & Eng. Ency. of Law, 2d ed., 845, and note; 20 Cyc. 1007, and note; *Kling* v. *Tunstall,* 109 Ala. 608, 19 South. 907.) Furnishing a bill of particulars in which this claim is listed is not pleading a counterclaim within the meaning of section 6540, Revised Codes. In finding that this claim was a valid setoff in favor of the Bell Company, in the absence of any pleading asserting it, and in the absence of any directions to the Bell Company, given prior to the levy of the writ to pay such claim, the trial court erred.

The next item in the second group is one for $587.36, and this was reduced upon the trial to $461.41, for expenses incurred in discharging the outstanding bonds of the Park Company. It will be remembered that by the terms of the written contract of June 23, $20,000 of the purchase price was to be deposited with the American Trust and Savings Bank, to be by the bank applied to the payment of those bonds, and that the Park Company agreed to pay all costs and charges of redeeming the bonds. The authority of the Bell Company to pay $20,000 toward the discharge of those bonds is at least an implied prohibition against the expenditure of any greater amount, and we are not informed by what authority the Bell Company assumed to increase its liability. If the contract had

provided that the Bell Company should pay off the bonds, then it would have had authority to use such sum as was necessary for that purpose; but that is not the contract. The Bell Company may have a valid claim against the Park Company for this additional outlay; but this record not only fails to disclose any authority for asserting it against the attaching creditor, but does show a want of such authority. The Bell Company was limited by the contract to the expenditure of $20,000 for that single purpose; and since it was not authorized, prior to the levy, to make such additional expenditure, finding No. 5 made by the trial court is erroneous as to the excess over $20,000 expended in redeeming those bonds.

The other claims in this second group may be considered together. There is not a word of evidence to indicate whether any of these claims were or might become lienable. The witness Ferguson, the only one who testified in regard to them, did not know anything as to their character. If the claim of the Chicago Telephone Company was ever a lienable claim, the evidence affirmatively shows that a lien for it has never been filed, and that the time for filing a lien had expired long prior to the date of the levy of the writ of attachment. There is not any evidence that any of these claims were for materials which went into the property of the Park Company or for labor done upon its property, nor is there any evidence to show when any of such claims matured; and therefore finding No. 10, made by the trial court, that the claim "of the Chicago Telephone Company for $477.15, Anton Ludwigson for $101.70, the Thompson Falls Mercantile Company for $459, Pauline and Lillian Turner for $34.65, and W. J. Fransham for $51, aggregating $1,123.50, were for materials furnished to and work done for said Yellowstone Park Telephone and Telegraph Company, and were referred to and intended by said last-named company under and by virtue of said contract of June 23, 1905, to be paid out of the aforesaid price of its said property, in addition to the liens, encumbrances and mortgages hereinbefore referred to in so far as the purchase price for its said property would

pay the same,'' has not any support in the evidence whatever, if the reference is to the written contract of June 23, 1905.

But it is insisted that all of the claims of this second group, excepting claims Nos. 9 and 10 above, were properly allowed under a parol agreement of June 23, 1905, made subsequently to the execution of the written contract. The written agreement provides for the payment, out of this $5,000, of claims which were or might become encumbrances upon the property. It is now urged that under this parol agreement such other claims were to be paid as might be embraced in a schedule then agreed to be furnished by Hall, the president of the Park Company. The evidence touching this alleged parol agreement is submitted in full:

"H. L. Burdick, being recalled for further examination, testified as follows: [Direct examination.] I was present when this contract between the two companies and Mr. Hall was signed. Mr. S. H. McIntire was also present. Q. Now, was there anything said about what claims were outstanding against the Yellowstone Telegraph Company after the making of the contract? A. I inquired of Mr. Hall, after he had signed the contract, if he was quite sure that the amount of claims outstanding would not exceed $5,000. Mr. Hall stated that he did not at that time know, but would submit to us a list of claims which could be paid as against the Yellowstone Park Telephone and Telegraph Company. He submitted such a list as that to Salt Lake, not to me. Q. Do you know whether or not the list submitted by him is the list that is contained in the bill of particulars attached to the answer in this case? You know the bill of particulars, you can look at it. A. A good deal of the correspondence was sent to me with reference to these claims. The liens were submitted by me to Salt Lake. They were first handed to me. I can designate on that bill of particulars what claims I discovered myself to be against the property, and that Mr. Hall sent on to me. The claims submitted by Mr. Hall to me were Harry Bronson, C. L. Cory, Lew Miller, Montana Lumber and Manufacturing Company,

Montana Electric Company, J. C. Enoch, Anton Ludwigson, and C. C. Rickman. [Cross-examination.] It seems quite evident from the contract which I made that I was a little apprehensive, even before the contract was signed, that the claims might amount to more than $5,000; and I practically protected myself against such deficiency as that by requiring and obligating them to put up a bond to the amount of $10,000, to the effect that it should not be more than that. Mr. Wallace, the president of the company, instructed me to find out as far as I could what liens lay against the Yellowstone Park Telephone and . Telegraph Company. That was before the contract was signed. I started the procedure, but was not satisfied that we had found everything that might lie against the company. Therefore we had some discussion as to whether we were free and clear as to the amount. So as to be sure to be protected in the matter, we put this clause in the contract requiring a bond that there should not be more than $5,000. We asked Mr. Hall to submit to us a list of claims that in his knowledge lay against the company. I found the lien of Harry Bronson, Cory, Montana Electric Company, Lew Miller, J. C. Enoch, Anton Ludwigson, on file, and I believe, the Montana Lumber and Manufacturing Company was also on file. Mr. Hall really did not submit any claims to me personally. There were some claims sent to me for submission to the Salt Lake office, by Mr. Hall to me; but I don't remember what claims they were. [Redirect examination.] I have designated the liens that were first submitted to me.''

When we consider the subject matter of this conversation, the purpose to be accomplished, and the efforts that had already been put forth, it appears to us that there is not any room for a difference of opinion as to the effect of this evidence. The written agreement had just been executed. It provides for the payment of such claims as were or might become encumbrances upon the property then purchased. The contract in terms declares that it was the intention of the parties that the property should be turned over to the Bell Company free

from any encumbrances. Mr. Wallace, the president of the Bell Company, had instructed Burdick, who was local superintendent, to ascertain what claims were outstanding that were liens upon the property, and Burdick had made an effort to comply; but, not being fully satisfied, this discussion arose, resulting in Hall's agreement to furnish "a list of claims that in his knowledge lay against the company." Since it was . wholly immaterial to the Bell Company what indebtedness the Park Company had aside from claims which were or might become encumbrances upon the property, it is impossible to suppose that any indebtedness other than such lienable claims was ever in contemplation of the parties when this conversation was had. The record discloses that the Bell Company has not paid these additional nonlienable claims, and it cannot have any interest in paying them. As to any balance of the $5,000 it is the mere trustee, and as to the final disposition of the balance it cannot have any interest. In view of the fact that a written agreement had just been executed, which fully sets forth the intention of the parties, it seems altogether unreasonable that the parties would proceed immediately to enter into a parol agreement which would have the effect of enlarging the scope of the written contract, and that such parol contract should be called into existence at the instance, not of Hall, who might have had some interest in seeing these nonlienable claims paid, but of the Bell Company, which was not interested in them to any extent whatever. We are thoroughly convinced that Burdick desired a list of lienable claims, such claims as Mr. Wallace had directed him to investigate, and that Hall's agreement to furnish a list of claims which lay against the company was intended to and did refer to the very claims with regard to which Mr. Wallace was solicitous; and the fact that in July following Hall approved these other claims, and directed the Bell Company to pay them, cannot be invoked to the prejudice of this plaintiff, whose rights attached as of the date of the levy of the writ. The evidence fails to support finding No. 8 made by the trial court, and fails to

justify the court in holding that the Bell Company was entitled to be credited with any of the claims comprising this second group, referred to above.

But there is a suggestion found in the brief of respondent, that, at the date of the levy of the writ, the $5,000 was retained to meet the payment of outstanding claims against the Park Company, and, until the amount of such claims was determined, the Bell Company did not owe to the Park Company anything whatever; in other words, that the Bell Company's liability was then so far contingent that it was not subject to garnishment; and *Cowell* v. *May,* 26 Mont. 163, 66 Pac. 843, is cited, and the following quoted from the opinion: "Although the immaturity of a debt at the time of garnishment is, of itself, unimportant in so far as the ultimate liability of the garnishee is concerned, yet, in order to charge him, there must be an existing debt at the time of the service—a contract under which a debt may or may not arise is not sufficient. There must be at the time of the service a debt due or to become due, and not a contingent liability or a conditional contract merely." And this is followed by a quotation from section 551, Drake on Attachment. That this is a correct statement of the rule is evidenced by the authorities generally; but if the liability of the garnishee is certain, and the only uncertainty which exists is as to the amount of such liability, then the debt, whatever it may be, is subject to attachment. This is the meaning of section 6667 of the Revised Codes, and is the rule recognized by the authorities. (20 Cyc. 1008, and note; 14 Am. & Eng. Ency. of Law, 2d ed., 769; 2 Wade on Attachment, sec. 450; *Webster Wagon Co.* v. *Peterson,* 27 W. Va. 314; *Miller* v. *Scoville,* 35 Ill. App. 385; *Downer* v. *Topliff,* 19 Vt. 399.) In 2 Shinn on Attachment and Garnishment, section 481g, it is said: "The contingency which will prevent the property or debt from being attached must be such a contingency as affects the property or debt itself, and not simply one which affects the liability of the garnishee to have the effects or credits taken from him in a particular manner. It must be such a con-

tingency as may preclude the principal from any right to call the garnishee to account.'' (*Dwinel* v. *Stone,* 30 Me. 384.)

There is not any difference in principle, and little, if any, in the facts, between the present action and the case of *New England Marine Ins. Co.* v. *Chandler & Burroughs,* 16 Mass. 275. In the latter case Chandler was indebted to the Union Bank and to other parties, including the insurance company. He transferred to Burroughs, as trustee, certain certificates of stock, with the understanding that Burroughs should sell the stock, pay the bank, and turn over any surplus to Chandler. Before the securities were sold, Burroughs was served with garnishment process in an action by the insurance company against Chandler. Burroughs answered setting forth the facts, from which it appeared that the value of the available assets in his hands exceeded Chandler's indebtedness to the bank, and the court properly held that, though the insurance company's case would have to be delayed until Burroughs could sell the securities and account for the surplus over the amount due the bank, such surplus, whatever it might be, was a garnishable debt. The Massachusetts case is cited with approval in *Cutter* v. *Perkins,* 47 Me. 557.

If in this present case the Bell Company had made answer to the garnishment immediately after service of the writ, it would have been compelled to set forth that it had in its hands, as trustee for the Park Company, $5,000, out of which it was obligated to pay all claims against the Park Company which were then or might become encumbrances upon the property transferred by the agreement of June 23; that the amount of encumbrances then on the property was $3,178.07; that there were the outstanding claims of Walsh, Thompson Falls Mercantile Company, Ludwigson, Miles, the Turners, and Fransham, aggregating $749.25, which might or might not be lienable, dependent upon the character of the claims and the time when each matured. Such would have been a full and fair return by the garnishee, and it would have shown a substantial balance in its hands, which under the contract be-

longed to the Park Company. That amount was certain, and there was a further balance which might or might not be subject to garnishment, depending upon the result of an investigation of the claim last-mentioned, and, if such investigation had disclosed the nonlienable character of those claims, the entire balance over and above $3,178.07 would have been subject to garnishment. Apparently the Bell Company did not make any answer to the garnishment until long after the time for filing liens for these claims just mentioned had expired, and no liens were filed, and, since the written contract of June 23 does not provide for the payment of these claims, the entire balance over and above the amount of the claims which were included in the contract of June 23 is subject to garnishment, even though at the date of the service of the writ the exact amount of such balance was not definitely fixed.

Since there is not any dispute as to the facts of this case, a new trial is not necessary; but the cause is remanded to the district court, with directions to set aside its findings and judgment, and enter judgment in favor of the plaintiff for $1,821.93 and costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied May 18, 1910.