SLOAN ET AL., APPELLANTS, *v.* BYERS ET AL., RESPONDENTS.

(No. 2,544.)

(Submitted October 8, 1908.  Decided November 5, 1908.)

[97 Pac. 855.]

*Water Rights—Statutes—Parties—Decree—Res Adjudicata.*

Water Rights—Parties—Statutes—Decree.
1.   *Held*, that section 4852, Revised Codes, which provides that in a water right suit the plaintiff may make any or all persons who have diverted water from the same source parties to such action, and that the court may in one judgment settle the relative rights and priorities of all the parties to such action, is permissive and not mandatory.

Same—Decree—Pleadings.
2.   The district court may, under the authority of section 4852, Revised Codes, in one judgment settle the relative priorities and rights of all the parties to a water right suit, only when pleadings have been framed so as to justify such settlement.

Same—Parties Defendant—Rights *Inter Sese*—Adjudication—Pleadings.
3.   A number of defendants in a suit involving water rights, jointly filed an answer alleging that their right to the use of a certain number of inches of water was superior and prior to the right of plaintiff, but failed to set up their rights as against each other.  The court found that they were entitled to the number of inches claimed by them and that their "right" was superior to that of plaintiff.  *Held*, that the rights of the parties defendant, as between themselves, were not presented to the court by the pleadings for determination, and that therefore its decree could not estop them from having such rights determined in a subsequent suit.

Same—Parties Defendant—Rights *Inter Sese*—Adjudication—Legislative Powers.
4.   *Quaere:* Did the legislature in enacting section 4852, *supra*, intend to compel parties, made defendants to a water right suit pursuant to its provisions, to litigate their respective titles as between themselves; and if so, has that body the power to coerce them to do so?

*Appeal from District Court, Jefferson County; Lew. L. Callaway, Judge.*

ACTION by Mary A. Sloan and others against Luella Byers and others. From a judgment on the pleadings in favor of defendants, plaintiffs appeal. Reversed and remanded.

*Mr. C. B. Nolan,* and *Mr. Geo. F. Cowan,* for Appellants.

*Mr. Wm. Wallace, Mr. John G. Brown,* and *Mr. R. F. Gaines,* for Respondents.

Where interests are necessarily adverse and necessarily passed upon in one proceeding where the adverse claims are set out, the judgment acts as an estoppel of the points raised. (*Bingham v. Kearney,* 136 Cal. 175, 68 Pac. 597; *Baldwin* v. *Hanecy,* 204 Ill. 281, 68 N. E. 560; *Cook* v. *Des Moines,* 125 Iowa, 611, 101 N. W. 434; *Osage City Bank* v. *Jones,* 51 Kan. 379, 32 Pac. 1096; *Goldschmidt* v. *County of Nobles,* 37 Minn. 49, 33 N. W. 544; *Nave* v. *Adams,* 107 Mo. 414, 28 Am. St. Rep. 421, 17 S. W. 958; *Hapgood* v. *Ellis,* 11 Neb. 131, 7 N. W. 845; *Boston etc. Ry. Co.* v. *Sargent,* 72 N. H. 455, 57 Atl. 688; *Ostrander* v. *Hart,* 130 N. Y. 406, 29 N. E. 744; *Baugert* v. *Blades,* 117 N. C. 221, 23 S. E. 179; *Logan* v. *Trayser,* 77 Wis. 579, 46 N. W. 877; *Corcoran* v. *Chesapeake etc. Canal Co.,* 94 U. S. 741, 24 L. Ed. 190; *Louis* v. *Brown Tp.,* 109 U. S. 162, 3 Sup. Ct. 92, 27 L. Ed. 892; *Voss* v. *Lewis,* 126 Ind. 155, 25 N. E. 892.)

Where issues might have been decided they are presumed to have been decided. (*Lillis* v. *Emigrant Ditch Co.,* 95 Cal. 553, 30 Pac. 1108; *Woolverton* v. *Baker,* 98 Cal. 628, 33 Pac. 731; *Gray* v. *Dougherty,* 25 Cal. 266, 23 Cyc. 1170.)

MR. JUSTICE SMITH delivered the opinion of the court.

We adopt from the brief of counsel for the appellants the following statement of the case, which respondents' counsel agree is substantially correct:

This action was commenced in the district court for Jefferson county for the purpose of quieting the title to one hundred and ten inches of water which was decreed to a certain ditch, and fixing the amount to which each party was entitled. It was alleged that in 1904, in an action then tried, a decree was rendered which awarded to the ditch in question one hundred and twenty inches of water, and by the decree in question a right of ten inches out of the quantity named was given to one S. H. Knowles. The Sloan ditch was constructed originally by Asa H. Sloan, who was the predecessor in interest of the appellants and the respondent Luella Byers, and it was alleged that an appropriation was made by him of fifty inches, and that the ditch was thereafter enlarged so that it carried an additional seventy inches, and through the enlargement thus made an appropriation was made by the respondents, other than Luella Byers, of seventy inches of water, but that the appropriation of fifty inches was prior to that of the appropriation of seventy inches. It was further alleged that, after allowing proportionately for the ten inches awarded to Knowles, the appellants' right would be forty-five and five-sixths inches, and a decree was asked fixing the amount to which appellants were entitled at that quantity and giving that quantity a priority over the remaining water belonging to the ditch, and to which the respondents, other than Luella Byers, were entitled.

The respondents Knowles, O'Rourke, Merriman, and Stewart answered separately from the respondent Jefferson county. In this answer there was a denial as to the priority of the Sloan right, an admission as to the validity of the decree fixing the capacity of the ditch, and the reduction of the amount awarded the ditch on account of the Knowles right of ten inches. The defense was then interposed that by the decree rendered, giving to the Sloan ditch one hundred and twenty inches of water, there was an adjudication that the interests in the ditch and water right were joint and equal, and the pleadings and decree in that suit were made a portion of the answer, and that on account of the proceedings had in that case the appellants were estopped

from claiming an interest in the ditch and water right other than a joint and equal one with the respondents.

In this first suit an action was brought by one Josephine C. Andrews against the predecessors of the appellants and respondents and others. The action was what is generally known as a "water right suit," and was for the purpose of determining the rights of all the parties to the waters of Muskrat creek. The plaintiff in that suit alleged that she was entitled to the use of one hundred and fifty inches of water, and that this was a prior right, except as to twenty-five inches, which covered the appropriation made by Asa H. Sloan. In the answer filed in that suit the appellants and respondents in the present suit joined. F. C. Berendes succeeded to the interest of William C. Sloan. In this answer there was a denial of the priority of the one hundred and fifty-inch appropriation, followed by the following averments: "And these defendants, further answering the said complaint of plaintiff, allege and show unto this honorable court that they are jointly and severally interested in the ditch by means of which the waters of said Muskrat creek have been appropriated, and known as the 'Sloan ditch,' and the extension made to the same, to the extent of one hundred and twenty inches, measured in accordance with the provisions of the statute in such case made and provided, and that said ditch was and is of sufficient capacity and grade to carry that amount, and that their right, title and claim thereto is, by virtue of three prior appropriations of the said waters, to the extent aforesaid, one on or about the first day of December, 1866, one on or about the thirty-first day of July, 1867, and one, on or about the thirtieth day of November, 1872, each to the amount of one hundred and twenty miner's inches, paramount and superior to the right, title, and claim of the plaintiff, and that they are severally and respectively the owners of agricultural lands which can be made available and profitable only by irrigation, and that the said waters have ever since the appropriation thereof, been used and possessed by them and their predecessors in interest for said purpose; and that they are now entitled to the use, pos-

session, and enjoyment of the same as against said plaintiff and all persons whomsoever.'' The reply in the first suit denied the foregoing allegations. There was a finding in that suit to the effect:

"That the said defendants Jefferson county, Mary A. Sloan, Luella Byers, Peter B. Mills, Edward O'Rourke, George Merriman, W. H. Stewart, and Mary A. Sloan, Luella Byers, Annie E. Berendes, William C. Sloan, John B. Sloan, Clinton A. Sloan, and Seymour D. Sloan, as heirs at law of Asa H. Sloan, deceased, and their grantors and predecessors in interest, did in the years 1866, 1867, and 1872, appropriate one hundred and twenty statutory inches of the waters of said Muskrat creek by means of a certain ditch known as the 'Sloan ditch,' tapping said creek and leading to and upon their lands mentioned and described in their answer for the purpose of irrigating said lands, and for other useful and beneficial purposes, and that ever since and at all proper times and seasons have used the same and the whole thereof for such purposes, subject to the right of the defendant Knowles to the use of ten inches thereof hereinafter mentioned and set forth, and the whole thereof is necessary for such purposes. That such appropriation is prior in time to that of the plaintiff in what is known as the 'Andrews ditch,' and prior in time to that of the defendants McNeill and Hammer in what is known as the 'McNeill and Hammer ditch' "
—followed by a conclusion of law, incorporated in the decree as follows: "That the said defendants Jefferson county, Mary A. Sloan, Luella Byers, Peter B. Mills, Edward O'Rourke, George Merriman, W. H. Stewart, and Mary A. Sloan, Luella Byers, Annie E. Berendes, William C. Sloan, John B. Sloan, Clinton A. Sloan, and Seymour D. Sloan, as heirs at law of Asa H. Sloan, deceased, are now, and they and their grantors and predecessors in interest have been since the years 1866, 1867, and 1872, the owner and owners of and entitled to the use of one hundred and twenty statutory inches of the waters of said Muskrat creek (subject to the right of the said defendant Knowles to the use of ten inches thereof hereinbefore found) taken there-

out and appropriated by means of their ditch, known as the 'Sloan ditch,' leading to and upon their said lands, and that such right of said defendants to the use of said water is prior, superior, and paramount to the rights of the plaintiff and defendants McNeill and Hammer.''

The answer in the present suit likewise set up title by adverse use, but its consideration is of no concern on this appeal. In the reply appellants admit all of the allegations in reference to the former suit, but aver that it was distinctly understood that the rights severally in the Sloan ditch, as to quantity and date of appropriation, should not be determined, and no determination was had in that suit of their rights. A motion for judgment on the pleadings in favor of Knowles, O'Rourke, Merriman, and Stewart was made and sustained and a decree entered in favor of the respondents named, and an appeal from this judgment is taken.

The only question presented for review is whether or not the decision in the first suit is an adjudication of the questions now presented, and whether, with the understanding had that as between themselves their rights should not be determined in that litigation, they are estopped from having these rights determined and fixed.

We are of opinion that the district court was in error in sustaining the motion for judgment on the pleadings. Section 4852, Revised Codes (sec. 1891, Civ. Code 1895), reads, in part, as follows: ''In any action hereafter commenced for the protection of rights acquired to water under the laws of this state, the plaintiff may make any or all persons who have diverted water from the same stream or source parties to such action, and the court may in one judgment settle the relative priorities and rights of all the parties to such action.'' After a careful study of the pleadings and decree in the *Andrews Case,* we are satisfied that the only matter actually determined was that the water right of the defendants Jefferson county, Mary A. Sloan, Luella Byers, Peter B. Mills, Edward O'Rourke, George Merriman, W. H. Stewart, and Mary A. Sloan, Luella Byers, Annie E. Ber-

endes, William C. Sloan, John B. Sloan, Clinton A. Sloan, and Seymour D. Sloan, as heirs at law of Asa H. Sloan, deceased, was prior, superior, and paramount to the rights of the plaintiff and defendants McNeill and Hammer. Indeed, that was the only issue made by the pleadings aside from the questions raised by the answer of the defendant Knowles, who appears to have claimed the right to the use of ten inches of water adversely to both plaintiff and defendants. It is impossible to read the decree in the *Andrews Case* and determine that the court in fact determined any of the rights of the parties to this action as between themselves. No answer was filed raising such issues, save in the case of Knowles, and the court in its findings of fact and conclusions of law referred to the defendants as the "owner and owners of and entitled to the use of one hundred and twenty statutory inches of the waters of Muskrat creek, taken thereout and appropriated by means of their ditch known as the 'Sloan ditch' and leading to and upon their said lands." And again: "Such right of said defendants to the use of said water is prior, superior, and paramount to the rights of the plaintiff and defendants McNeill and Hammer."

But it is said that the court must be presumed to have decreed that the defendants had equal rights, because section 4852; Revised Codes, is mandatory in its terms. And in this connection counsel for the defendants employ the following language: "We, of course, recognize the rule that estoppel by judgment usually does not operate as between cotenants in an ordinary action concerning the cotenancy property. The well-recognized and defined exception to this rule is that, whenever conflicting claims are in fact advanced, it matters not whether by cross-petition or adverse answer between defendants—the judgment pronounced thereon is as conclusively an estoppel as though there were no cotenancy. Otherwise endless litigation would result. Courts very generally have recognized this exception to the rule, and held that, where interests are necessarily adverse and necessarily passed upon in one proceeding where the adverse claims are set out, the judgment acts as an estoppel of

the points raised.'' But the respective rights of the defendants were not necessarily passed upon by the court. We regard section 4852, *supra,* as permissive, and not mandatory. The court *may* in one judgment settle the relative priorities and rights of all the parties to such action if pleadings are framed so as to justify such settlement. It is said that this statutory authority was exercised, but we do not think it was. A significant feature of the case is found in the fact that the defendants in the *Andrews Case* alleged that they claimed by virtue of three appropriations of date, respectively, 1866, 1867, and 1872, and the court found that the right to use this one hundred and twenty inches of water was acquired in 1866, 1867, and 1872. This shows that in the one hundred and twenty inches claimed appropriations of different dates were included. The defendants pleaded together that their right to the use of one hundred and twenty inches of water was superior to any right of the plaintiff. They did not attempt to set forth their rights as against each other. It may be that the plaintiff could have compelled them to do so by motion or other appropriate proceeding in order to enable him to know what his rights were with relation to each individual defendant; but he did not elect so to do. Any defendant had the same privilege; but Knowles only availed himself of it. The court could not try issues not made by the pleadings.

In the case of *Reynolds* v. *Stockton,* 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464, Mr. Justice Brewer, speaking for the court, said: ''The invalidity of the judgment depends upon the fact that it is in no manner responsive to the issues tendered by the pleadings. This idea underlies all litigation. Its emphatic language is that a judgment, to be conclusive upon the parties to the litigation, must be responsive to the matters controverted. Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not, in fact, put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial and actually litigated the matter. In such a case the

proposition so often affirmed that that is to be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made. Here there was no appearance after the filing of the answer, and no participation in the trial or other proceedings. Whatever may be the rule where substantial amendments to the complaint are permitted and made, and the defendant responds thereto, or where it appears that he takes actual part in the litigation of the matters determined, the rule is universal that where he appears and responds only to the complaint as filed, and no amendment is made thereto, the judgment is conclusive only so far as it determines matters which by the pleadings are put in issue.''

A most interesting case on this point is *Munday* v. *Vail*, 34 N. J. L. 418, where the court said: ''Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First. The court must have cognizance of the class of cases to which the one to be adjudged belongs. Second. The proper parties must be present. Third. The point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that, because A and B are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question that a power of judicial decision arises. If, in an ordinary foreclosure case, a man and his wife being parties, the court of

chancery should decree a divorce between them, it would require no argument to convince every one that such decree, so far as it attempted to affect the matrimonial relation, was void; and yet the only infirmity in such a decree would be found upon analysis to arise from the circumstance that the point decided was not within the substance of the pending litigation. In such a case the court would have acted within the field of its authority, and the proper parties would have been present; the single but fatal flaw having been the absence from the record of any issue on the point determined. The invalidity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely upon the ground of common justice. A judgment upon a matter outside of the issue must of necessity be altogether arbitrary and unjust, as it includes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels. But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus Lord Coke, treating of this doctrine, says: 'A matter alleged that is neither traversable nor material shall not estop.' (Coke's Littleton, 352b.) And in the note to the *Duchess of Kingston's Case,* in 2 Smith's Lead. Cas. 535, Baron Comyn is vouched for the proposition that judgments 'are conclusive as to nothing which might not have been in question, or was not material.' For the same doctrine, that in order to make a decision conclusive not only the proper parties must be present, but that the court must act upon 'the property according to the rights that appear' upon the record, I refer to the authority of Lord Redesdale. (*Gifford* v. *Hort,* 1 Sch. & Lef. 408; see, also, *Gore* v. *Stackpole,* 1 Dow., 30; *Colcough* v. *Sterum,* 3 Bligh, 186.) In *Curtis* v. *Price,* 12 Ves. 102, Sir William Grant appears in a collateral proceeding to have looked into a decree to see how far it

had been warranted by the matters in litigation.  *  *  *  None of the cases are directly in point, but they tend to establish the general proposition that a decree or a judgment can have no force which is not appropriate to any part of the matter in controversy before the court.  In the present instance, the deed of trust in question, as it regards the parties to it, was not by any one called in question.  The defendants to this chancery suit did not ask for any adjudication upon their rights, and, when consequently the court undertook to decide and conclude such rights, such act was clearly *coram non judice,* and was consequently void.''    (See *O'Connor* v. *Irvine,* 74 Cal. 435, 441, 16 Pac. 236.)

It is argued that the legislature in enacting section 4852 intended to compel defendants to litigate their respective titles as between themselves, to the end that future litigation should be avoided.  The answer to this is that, if the legislature had so intended, it had the opportunity to use words of command and neglected to do so.  It may be seriously doubted whether the legislature has power to compel a man to enter upon a course of litigation unless some one has a cause of action against him.  A mode for the perpetuation of testimony is provided by sections 8042 to 8048, Revised Codes (secs. 3420 to 3426, Code Civ. Proc. 1895).  Mr. Justice Holloway's opinion in *McNinch* v. *Crawford,* 30 Mont. 297, 76 Pac. 698, is quoted in respondents' brief.  He there said: ''Every party to this suit was an antagonist to every other party.''  But the record in that case discloses the fact that the answering defendants appeared and filed separate answers and cross-complaints controverting the allegations of plaintiff's complaint, every one setting forth his right and putting in issue the allegations of every other cross-complainant.

Numerous cases are cited by respondents to the effect that, if parties have had a hearing and an opportunity of asserting their rights, they are concluded by the decree as far as it affects rights presented to the court and passed upon by the decree.  Our conclusion that section 4852 is not mandatory

and that the rights of these parties, as between themselves, were not in fact presented to the court, seems to take this case out of the operation of the rule as thus laid down. (See *State ex rel. Boston & Mont. C. C. & S. M. Co.* v. *Dist. Court,* 30 Mont. 96, 75 Pac. 956.) But beyond all this, we think that sections 7914 and 7917, Revised Codes (secs. 3196 and 3199, Code Civ. Proc. 1895), are decisive of this point. Those sections read as follows:

"Sec. 7914. The effect of a judgment or final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows: 1. In case of a judgment or order against a specific thing, or in respect to the probate of a will, or the administration of the estate of a decedent; or in respect to the personal, political or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person. 2. In other cases the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity; *provided,* they have notice, actual or constructive, of the pendency of the action or proceeding."

"Sec. 7917. That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto."

These sections define the effect of a judgment in this state. We have determined that upon the face of the judgment in the *Andrews Case* it does not appear that the rights of the defendants, as between themselves, were adjudged; neither were they in view of our interpretation of section 4852, Revised Codes, actually and necessarily included therein or necessary thereto. (*Heilner* v. *Smith,* 49 Or. 14, 88 Pac. 299.)

The judgment of the district court of Jefferson county is reversed, and the cause remanded for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.