GALIGER ET AL., RESPONDENTS, *v.* McNULTY ET AL., APPEL-
LANTS.

(No. 6,010.)

(Submitted February 14, 1927.   Decided March 23, 1927.)

[260 Pac. 401.]

*Water Rights — Duty of Appropriator — Taking Water from
One Watershed to Another—Vagrant Waters—Sale of Sur-
plus Water Unauthorized — Adverse Possession — Burden of
Proof—Abandonment—Resumption of Use—Date of Right—
Res Adjudicata—Judgment—Findings Do not Constitute—
Answer—New Matter—Counterclaim—Pleading.·*

Judgment—Findings and Conclusions of Law Do not Constitute.
1.   Findings of fact and conclusions of law made by the dis-
trict court do not constitute its judgment; they are merely the
foundation for a judgment.

Water Rights—Res Adjudicata—Findings in Prior Action Held not
Adjudication of Rights—Evidence.
2.   Findings in a water right suit the purpose of which was
to secure an injunction against interference with plaintiffs' rights,
in which neither party asked for an adjudication of their rights
and defendants merely prayed for dismissal of the action and
their costs of suit, which findings were general and indefinite
as to time, amount, right and necessity of appropriation and
introduced in evidence in a subsequent suit, *held,* not an adjudica-
tion of the rights of the parties, under the above rule, and
therefore not evidence of res adjudicata.

Same—Court may Fix Time for Use in Decree.
3.   In a water right suit the trial court may properly fix both
the amount of water a party is entitled to and the time within
which he may use it.

Same—Appropriator must Turn Surplus Water Back into Stream from
Which Taken.
4.   Under section 7097, Revised Codes 1921, a prior appropria-
tor of water must turn back into the stream from which the
water is taken all over and above what is actually and neces-
sarily used by him.

Same—Taking Water from One Watershed to an Adjoining One—Duty
of Appropriator.
5.   Where water is taken from one watershed to an adjoining
one the burden placed upon the water must not be added to,
to the detriment of appropriations made for irrigating lands
within the area of the stream from which the water is diverted.

5.   See 27 R. C. L. 1074.

Same—Appropriator may Change Place of Diversion but may not
     After Satisfying His Needs, Sell Remainder.
     6.  An appropriator of water may change the place of diversion
     and use thereof, provided such change does not work to the
     prejudice of subsequent appropriators; but he may not, after
     having used it to answer the purpose of his appropriation, sell
     what remains to others, and thereby deprive subsequent ap-
     propriators of their right to use it.
Same—When Water Becomes Vagrant and Subject to Appropriation—
     Sale Void.
     7.  Water diverted from a watershed other than the one in which
     it was being used for placer mining purposes, after use, be-
     ing incapable of being returned to the stream from which it was
     taken, became fugitive and vagrant in character subject to
     appropriation; the appropriator thereof had no longer any
     ownership in it, had nothing to sell, and its attempted sale to
     one for irrigating purposes was void.
Same—Abandonment—Subsequent Resumption of Use—Effect on Right.
     8.  Where the use of water is abandoned and later resumed, the
     right to its use vests from the date of resumption.
Same—Adverse Possession—Burden of Proof.
     9.  One claiming water by adverse possession has the burden of
     showing that his use of it deprived prior appropriators thereof
     at times when they actually needed it; proof merely that the
     claimant used the water and claimed the right to use it for the
     statutory period not being proof of adverse use.
Pleading—New Matter.
     10.  Where a defendant in his answer relies upon new matter
     for affirmative relief he must plead it with the same particu-
     larity as is required of plaintiff in stating his cause of action in
     his complaint.
Same—Set-off—Recoupment—Counterclaim.
     11.  The terms "set-off" and "recoupment" are sometimes included
     in the term "counterclaim," and must be pleaded in order to
     enable the court to base a judgment thereon.
Water Rights—Failure to Plead Counterclaim—Judgment not Open to
     Complaint for Omission to Grant Defendant Relief.
     12.  Where defendants in a water right suit did no more by
     their pleadings and evidence than to show their appropriation
     and use of the water in question solely for mining purposes,
     asserting no claim that the water was being used or desired for
     agricultural purposes, except that after their appropriation had
     been subserved they claimed the right to sell the surplus to
     another for such purposes, a thing not permitted under the
     irrigation laws, they were in no position to claim that the court
     erred in not giving them that for which they did not ask in their
     answer.  (See pars. 10, 11, above.)

─────────────────────────────────────────────

[1, 2]  Judgments, 33 C. J., sec. 6, p. 1052, n. 33, p. 1053, n. 36, 37,
38, 39; sec. 125, p. 1195, n. 43. 34 C. J., sec. 1325, p. 915, n. 55;
sec. 1487, p. 1054, n. 47 New. Waters, 40 Cyc., p. 734, n. 32.
     [3]  Waters, 40 Cyc., p. 736, n. 46.
     [4]  Waters, 40 Cyc., p. 717, n. 98 New.
     [5–8]  Waters, 40 Cyc., p. 704, n. 11 New, p. 717, n. 98 New,
p. 718, n. 5 New, p. 720, n. 19, p. 721, n. 20, p. 725, n. 48, p. 728,
n. 70, p. 749, n. 79 New.
     [9]  Waters, 40 Cyc., p. 695, n. 39, p. 699, n. 62, 63, p. 728, n. 71,
p. 733, n. 27.

     6.  See 27 R. C. L. 1279.

*Appeal from the District Court, Madison County, in the Fifth Judicial District; W. L. Ford, Judge of the Fourteenth District, presiding.*

ACTION by Martin Galiger and others against Flora McNulty, Mary Swayze and others, in which Peter J. Simonsen intervened. From the judgment rendered, named defendants and intervener appeal. Affirmed.

*Mr. E. B. Howell, Mr. George R. Allen* and *Mr. Howard A. Johnson,* for Appellants, submitted a brief; *Mr. Allen* and *Mr. Johnson* argued the cause orally.

A number of specifications of error relate to the court's action in refusing to consider as binding upon or evidence against the plaintiffs, or any of them, the findings, conclusions and . decree in the action of *McKinney* v. *McKay,* No. 1249. The court's rejection of the decree for any purpose is apparently based upon its peculiar form, the decree being merely for defendants' costs and not incorporating the findings and conclusions as part of itself. However, the fact that after necessarily determining the respective water rights the court neglected to set them up in the decree is not the fault of the parties. The decree is presumed to include what it necessarily includes. (Sec. 10561, Rev. Codes 1921; *Wetzstein* v. *Boston & M. Consol. Copper & S. M. Co.,* 26 Mont. 193, 66 Pac. 943; *Lyon* v. *United States F. & G. Co.,* 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86; *Howell* v. *Bent,* 48 Mont. 268, 137 Pac. 49.) The action culminating in the decree was brought by the predecessors of four of the plaintiffs herein, against the predecessors of the defendants and intervener herein, to enjoin interference with the waters of Ramshorn Creek, alleging certain appropriations. The defendants' answer was virtually a general denial and did not set up the prior appropriations upon which they relied. Neither side asked an adjudication of water rights in their pleadings, but evidence was necessarily given by both sides to enable the court to determine the rela-

tive priorities and accordingly to grant or refuse the injunction prayed for. The court found that the defendant's right to all the waters in the south fork of Ramshorn Creek dated back to 1863 and was prior to the earliest right of any plaintiff, which was found to date back to 1864. Regardless of the fact that the parties did not ask for a decree of their respective rights, it is apparent that the priorities had to be determined by the court to decide the main issue; and it is apparent that the parties must have recognized that fact and produced evidence accordingly. It is equally apparent that no exceptions were taken to the findings, and that the parties assented to them, for no appeal was ever taken and no modification ever made. The fact that the findings were not incorporated or repeated in the decree is immaterial. (15 R. C. L. 974, 976, citing *Bleakley* v. *Barclay,* 75 Kan. 462, 10 L. R. A. (n. s.) 230, 89 Pac. 906.) Many citations are given by the authorities, but it will suffice to refer only to two decisions of this court (*In re Smith's Estate,* 60 Mont. 276, 199 Pac. 696; *Lyon* v. *United States F. & G. Co.,* 48 Mont. 591, Ann. Cas. 1915D, 1036, 140 Pac. 86), holding that as between parties or privies, the judgment is an adjudication, not merely of the conclusions expressed, but of everything necessarily included in them.

The court erred in rejecting the transaction between defendants and appellant intervener for the sale of a portion of the farmers' water right, to the extent of the latter's need for a beneficial purpose; in concluding and decreeing that as a matter of law no right was conveyed thereby.

It is axiomatic that an appropriator has a continued right to divert the amount of his appropriation up to the normal capacity of his ditches. It is also settled law that he may change the place or manner of use (1 Wiel on Water Rights, Chap. 22; sec. 7095, Rev. Codes 1921, and numerous decisions of this court, from *Woolman* v. *Garringer,* 1 Mont. 535, 1 Morr. Min. Rep. 675, up to date), if in so doing he does not prejudice intervening rights of appropriators on the same natural stream (1 Wiel, p. 534). In the present case no such prejudice was or could have been shown. If appellants were using the water

upon placers in Ramshorn Gulch, thus returning the waters
to that stream, they might not now change the purpose or
place of use, or sell the said right, so as to keep the water
from returning to that stream, to the prejudice of respondents.
But in the present case the waters have been taken to another
watershed. What is done with them there is immaterial to
respondents; they are not affected whether the water is used
once or a hundred times, whether it is sold or retained by
defendants. In either case the water is out of Ramshorn
Gulch and will not return. It follows, therefore, that de-
fendants are not limited to any one use, but may employ the
water for power, mining and agriculture; those additional
uses will not affect respondents, for they will not get the water
in any event. Granted that in so using the water defendants
are not entitled to divert more than they have heretofore
diverted, or at other times than they may heretofore have
diverted it; but with those provisos, respondents are not
affected by the transaction between defendants and intervener.
They are not hurt and will not be heard to complain. De-
fendants can use the water upon their placer claims and then
upon agricultural lands down the stream; or they can sell or
lease them for such use. To the extent they sell their right
for irrigation purposes they cannot use the water for that
purpose to the detriment of their vendee; but if they should,
respondents could not complain, for they are not affected.

*Mr. M. M. Duncan,* for Respondents, submitted a brief and
argued the cause orally.

Assuming the pleadings in the case of *McKinney* v. *McKay*
(No. 1249) would have supported a water decree from Rams-
horn Creek in favor of the defendants in that suit, there was in
fact no decree entered. In the recitals of the instrument,
claimed by appellants to be a water decree in the McKinney
suit, certain findings were made by the court based apparently
on the evidence introduced at the trial of the case, but these
findings did not enter into the mandatory part of the decree
and did not determine the water rights as between the parties

to the action in any manner.  In other words, the judgment did not adjudicate, and did not attempt to adjudicate, the water rights as between the parties thereto.  The court merely found that the use of the water as made by McKay did not injure the plaintiffs, and hence denied the injunction and entered a judgment for costs.  "Findings of a court in any particular case only constitute a well-recognized step in equity practice.  They do not constitute a decree, but only the foundation on which a decree may rest."  (21 C. J. 656, sec. 842; 21 C. J., sec. 720; Id., 657, sec. 843; see, also, *Herd* v. *Tuohy,* 133 Cal. 55, 65 Pac. 139; *Butt* v. *Herndon,* 36 Kan. 370, 13 Pac. 580; *Mitchell* v. *Insley,* 33 Kan. 654, 7 Pac. 201; *Auld* v. *Smith,* 23 Kan. 65; *Slethem* v. *Skinner,* 11 Idaho, 374, 82 Pac. 451.)

The evidence discloses that if the appellants are allowed to use the water at other times each year than fixed by the court, the respondents' crops will be damaged for want of proper irrigation; and that the change of use from mining to irrigation will injure them.  Under such evidence the court was justified in limiting the time of use of the water each year as it did.  (Kinney on Irrigation, sec. 177; *Nevada Water Co.* v. *Powell,* 34 Cal. 109, 91 Am. Dec. 685; *Santa Paula Water Works* v. *Peralta,* 113 Cal. 44, 45 Pac. 168; *Barnes* v. *Sabron,* 10 Nev. 245; 1 Wiel on Water Rights, 3d ed., p. 319, and notes.)

The law is to the effect that when the water of a stream leaves the possession of a party having a right to its use, all his rights to and interest in it are gone.  This rule is applicable to cases where the water is taken from one watershed and used in another watershed, and after such use the same is allowed to flow at random in the natural stream of the alien watershed. (*Eddy* v. *Simpson,* 3 Cal. 249, 58 Am. Dec. 408; *Kelly* v. *Natoma Water Co.,* 6 Cal. 105; *Clemens Horst Co.* v. *New Blue Point Mining Co.,* 177 Cal. 631, 171 Pac. 417; *Schulz* v. *Sweeny,* 19 Nev. 359, 3 Am. St. Rep. 888, 11 Pac. 253.)

Appropriation of water from one watershed for use in an alien watershed: With reference to this matter the respondents

offer the following suggestions: Is it a wise rule of law that permits a person to appropriate water from a stream, or any other permanent source of water supply in any definite watershed, and divert it into another and foreign watershed for some beneficial use, and thereby deprive the people residing within the watershed from which it was taken from ever thereafter acquiring the right to use such water therein for a beneficial purpose?

The courts, with more or less of legislative aid, in the course of time laid down a general rule to the effect that the use of water, once appropriated for a certain beneficial purpose, could be changed to another beneficial purpose; also, that the place of use might be likewise changed. This rule, like most all other rules of law, has its exceptions, and should have more exceptions, particularly where water is taken from one watershed to another, and after it has served the purpose for which it was originally taken, it should go back to the stream from which taken. The claimant should not, after he has exhausted the purpose for which such water was originally taken, be allowed to change it to some other use or some other ground outside of the watershed from which taken. And particularly should this be the case with reference to water rights originally initiated for placer mining purposes. The people take common knowledge, and the courts should take judicial knowledge, that placer mining in every placer gulch ever discovered is exhausted in time,—generally in too short a time,—whereas farming by means of artificial irrigation, like any other farming, may continue upon the same land "on down through the corridors of time" and forever, without exhausting the land.

Our experience is that these valleys from which the water has been taken in the manner before noted were in most instances settled by the homesteader for farming purposes subsequent to the time the water was taken from their streams for mining purposes in other valleys, and it is reasonable to believe that when these farmers settled these valleys they did so with the knowledge that all or part of the waters of their streams were then being only temporarily diverted from such

valleys for mining purposes, and that when the mining should be exhausted these waters would be returned to their natural courses.

This court has said that the burden is on the subsequent user of water to show by evidence that the change in use of water made by the prior appropriator, even when the change of use occurs after subsequent users' rights attaches, is prejudicial to him before he is entitled to protection as against such change of use (*Hansen* v. *Larsen,* 44 Mont. 350, 120 Pac. 229; *Lokowich* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063). This might be a just rule of law in cases where the water is not diverted in the first instance into an alien watershed, and especially so when the intent is only to use it for a temporary purpose, such as placer mining is known by all to be, but it should not be the rule in such a case, or in any case where the water is taken from its natural watershed.

If this court is going to apply the rule laid down in the last cases cited to all cases, even the character of cases herein mentioned, a great injustice, in our opinion, is going to result and no good come from it, because it is equitably wrong. If the right to take water from one watershed to another and keep it there when the use for which it was first taken has vanished—for another use, is to continue to prevail, then the date of the change of use should become the date of a new appropriation (the original appropriation to become extinct) as to other users of water from such stream within the watershed from which taken.

In any event, the rule should be in such a case that the burden of proof is upon the party changing either the purpose or place of use to show that such change does not injuriously affect others using the water within the basin of its source. But, in fact, the rule should be that where water has been taken into an alien watershed for a certain use on certain property, when that use ceases the right should cease if the water is then needed for any beneficial use in the basin from which taken. Such use would be pure equity, but it would be purer equity to hold that the waters of our streams cannot

be appropriated and used in an alien watershed at any time to the prejudice of the rights of anyone needing and requiring such water in the parent watershed for a beneficial use.

While this court in the cases of *Spokane Ranch & Water Co.* v. *Beatty,* 37 Mont. 342, 96 Pac. 727, 97 Pac. 838, *Lorwitch* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063, and *Carlson* v. *City of Helena,* 43 Mont. 1, 114 Pac. 110, had the question of taking water from the basin of Beaver Creek in Broadwater county (then Jefferson county) to French Bar on the Missouri River, in Lewis and Clark county, before it in a manner, it has not to our knowledge ever directly decided that water may be appropriated from one source and watershed and taken into another for use for a certain purpose, and a right for continuous use therein thereby acquired for such purpose, as against others having appropriated it for use in the parent watershed. It is apparent that it would take some stretching of the human imagination to say that section 7095, Revised Codes 1921, which deals with the right to change the point of diversion, character and place of use, recognizes the right of a person to acquire such a right.

HONORABLE WM. H. POORMAN, District Judge, sitting in the place of CHIEF JUSTICE CALLAWAY, who deemed himself disqualified, delivered the opinion of the court.

This action was instituted to have determined the relative rights of the parties to the use of waters of Ramshorn Creek, in Madison county. The appeal is from the judgment.

The plaintiffs allege their separate ownerships of certain tracts of land in the Ramshorn Valley requiring irrigation, their appropriation and use of water from Ramshorn Creek therefor, the invasion of their rights by the defendants, and they ask that they be decreed to be entitled to the use of the waters and that defendants be restrained from interfering with such use. Plaintiffs also plead a former decree, No. 916, made and entered August 30, 1909, in an action then pending in the district court for said county involving water rights in Ramshorn Creek.

Several of the defendants appeared by demurrer or answer. The appealing defendants Flora McNulty and Mary Swayze joined in an answer in which they admit certain allegations of the complaint and deny others; plead a former decree entered in said district court on the 8th of October, 1875, in an action then pending, to which their predecessors in interest were parties defendant. That cause in the transcript is referred to as No. 1249. The said defendants, further answering the complaint, as ground for affirmative relief allege their ownership of certain placer mining claims in "the basin of Bivens Gulch," the necessity of water to operate the same, and the appropriation by their predecessors in interest of all the waters of Ramshorn Creek prior to any other appropriation. The reply of plaintiffs negatives the affirmative allegations of the said defendants' answer.

The intervener and appellant Peter J. Simonsen bases his claim upon an alleged purchase of a part of the rights of the other appellants. The reply of the plaintiffs denies this claim of the intervener.

The specifications of error are numbered 1 to 66, inclusive, and include a very wide range. Respondents contend that many of the alleged errors are not set out with the particularity required by the rule of this court. There may be merit in this contention, but all questions involved may be considered under a few general heads and general propositions of law. The real question is, Have the rights of the appealing defendants, in and to the waters of the stream from which diver. sion is made, been properly adjudicated, preserved, and protected?

It appears from the transcript that Ramshorn Creek at low water flows about 117 inches at the head of the Miners' ditch, and in extreme high water about 1,600 inches apparently at the head of the McKay ditch; that there are approximately 700 acres of land along this creek irrigated with this water by the respondents. The water used by appellants is diverted from Ramshorn Creek and conducted through ditches referred to as the Miners' ditch, or upper ditch, the Hofeker or Stanley

ditch used for a time, and the McKay, or lower ditch, without the watershed of Ramshorn Creek and into Bivens Gulch, where for more than fifty years it has been used by the appealing defendants and their predecessors for placer mining purposes, and, after being so used, will not return to Ramshorn Creek, but flows down Bivens Gulch where it is used by intervener for irrigating argicultural lands.

In the previous "water suit" No. 916, relative to these same waters, tried in said county in 1909 a judgment and decree was on August 30, 1909, duly made and given, adjudicating the rights of the parties thereto. The appellants and the defendant Dulien were not parties to that suit. At the trial of the instant case, the plaintiffs offered in evidence this decree No. 916, entitled *Haines et al.* v. *Mock et al.* This was admitted without objection. There was a lengthy discussion between counsel for the respective parties relative to the effect of said former decree upon the rights of the parties in the instant case, the conclusion reached being that said former decree was, as between themselves, binding upon all who were, or whose predecessors in interest were, parties to that suit, but was not binding upon the appellants herein, they not having been parties thereto. It was agreed that the plaintiffs in this present action, No. 2176, were parties in the former suit No. 916, or a successor in interest of a party in that action except appellants and Dulien. The court stated that it would be necessary for plaintiffs to prove the amount and date of their appropriations. It was then stipulated that the former decree was a correct statement of the dates and amounts of plaintiffs' appropriations. It was further agreed that the former decree (916) was not a stipulated decree, but was reached upon evidence taken in open court. A map showing the lands and ditches owned by plaintiffs was put in evidence without objection. Plaintiffs then introduced some oral evidence tending to prove that their claimed rights had been invaded by the appealing defendants and rested their case.

In specification of error No. 65 appellants claim that the

**[1, 2]**    court erred in giving effect to the decree in cause No.

916 "as res adjudicata or as prima facie evidence or any evidence against defendants McNulty and Swayze." Had the court regarded these findings as res adjudicata as to defendants, the trial would have there ended, but they were not introduced or used to restrict appellants in their evidence in proving their claims or in combating the claims of plaintiffs. The introduction of the decree was to avoid the necessity of plaintiffs producing oral evidence as to the fact that they had made appropriations and the date and amount thereof; that is, to avoid a reproduction of the evidence that plaintiffs had some right which it would require evidence to refute. It was to that point to which the stipulations and decree were directed. The decree was binding upon all parties to that action without any stipulation in the case at bar. When, under the stipulations, it was put in evidence with the oral testimony, a prima facie case was made by plaintiffs, and the defendants were given full opportunity to establish a superior or prior right or to disprove the claims of plaintiffs.

The objection that it does not appear that this decree is now in force is without merit, and, if it were material in this case at all under the stipulations, the defendants failed to make any showing of any modification of that decree. There was neither error nor abuse of discretion in admitting this decree or in the effect given to it.

At the opening of appellants' case the former judgment, alluded to in their joint answer, with the entire judgment-roll, was offered in evidence. This is cause No. 1249, *McKinney et al.* v. *McKay et al.*, the judgment or decree bearing date October 8, 1875. Plaintiffs objected to its introduction on the ground that it was not an adjudication of any water right, but only a judgment for costs in a suit for injunction, and that the plaintiffs were not parties thereto. Both the decree and the judgment-roll were admitted, subject to the objection. Appellants contend that this 1875 decree gives to them a prior right to all the waters flowing in said Ramshorn Creek at the point of diversion. In that suit the plaintiffs alleged prior rights in themselves to the use of the waters of Ramshorn

Creek; that the predecessors in interest of the appellants in the instant case had interfered therewith and asked that they be enjoined and restrained from further interference.   In their answer the defendants in that suit in effect denied generally the claims of the various plaintiffs, pleaded a statute of limitations, and asked "that they be hence dismissed and for their costs of suit."   The defendants did not set up any prior appropriations upon which they relied, and neither party asked the adjudication of any water rights in their pleadings.   The court, as appears from the record, made certain findings, which appellants claim is an adjudication of their prior right to all of the waters of Ramshorn Creek.   These findings, if regarded as such in a water right suit, are very general and indefinite as to time, amount, right and necessity.   There were not any conclusions of law, but following the findings and independent thereof and without incorporating them in the decree or making any allusion to them, we have the statement: "Wherefore it is adjudged and decreed that the defendants have judgment for their costs herein," fixing the amount.   The so-called findings are independent of the pleadings and the demands of the parties, and the decree is independent of the findings and gives the defendants all they asked.   This decree is not an adjudication of any water rights, but only a judgment for costs in an action brought for the purpose of obtaining an injunction.

Section 9367, Revised Codes of 1921, provides that: "The facts found and the conclusions of law must be separately stated, and judgment must thereupon be entered accordingly." The supreme court of this state, in construing this section, clearly distinguished between a decree and the findings, wherein it states that "the language of that section makes it clear that the findings of fact and conclusions of law are not the judgment, but merely the foundation for the judgment." (*State ex. rel. Reser* v. *District Court*, 53 Mont. 235, 163 Pac. 1149.) This holding of the supreme court is in accordance with the general rule of law.

"A judgment does not reside in its recitals but in the mandatory portion of it." (33 C. J. 1194.)   "The decisions or find-

ings of a court, referee, or committee do not constitute a judgment, but merely form the basis upon which the judgment is subsequently to be rendered. A verdict is not a judgment, which may or may not be rendered upon it. The findings are not a judgment any more than is a verdict of a jury. Such findings or decisions amount only to an order for judgment." (33 C. J. 1052.) "A finding of fact of the trial court cannot be considered an adjudication, or used as evidence, unless some other ground can be found for its use than merely that it is a finding of the court." (*Mitchell* v. *Insley,* 33 Kan. 654, 7 Pac. 201; *Stethem* v. *Skinner,* 11 Idaho, 374, 82 Pac. 451.)

Section 10561, Revised Codes 1921, provides "that only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." (*Sloan* v. *Byers,* 37 Mont. 503, 97 Pac. 855.)

The effect of the decrees in the former actions having been determined, it is necessary to look to the other evidence in order to ascertain what water rights the appellants established in themselves.

W. W. Pennington, an engineer called by the appellants at the trial, testified that on June 18, 1925, he made measurements of the Miners' ditch and of the McKay ditch at the head of the ditches, and that the Miners' ditch had a capacity of 263 miner's inches, and the McKay ditch of 558 miner's inches, and that he could tell at that time what the size of the Miner's ditch originally was. According to other evidence, these ditches were constructed more than fifty years prior to that time and had been used during that period.

One of the appellants, Mrs. Swayze, testified that she lived in Bivens Gulch as early as 1870, but had no recollection beyond that time; that her father, Alexander McKay, was placer mining there at that time and had resided there since 1864; that he was using water through the Miners' ditch in 1870 and had used some water through the Hofeker or Spencer-Stanley ditch, but she did not know when either of these ditches was constructed, nor testify as to the amount of water

which they would carry, except that the Hofeker ditch was a
large ditch, and that in 1874 her father constructed the lower
ditch, referred to as the McKay ditch; that in their placer
mining they used all the water they could get; that they usually
began placer mining in May and turned the water into the
Miners' ditch about May 15, and used the water from both
ditches until the middle of July, when they turned it off of the
McKay ditch, but continued to use water through the Miners'
ditch until the latter part of October; and that they usually
carried the water over into Bivens Gulch from about the fif-
teenth day of May. She also testified that neither of these
ditches had been ever enlarged.

Mr. Frank Redfern, called as a witness on behalf of the
appellants, testified that he had lived in that vicinity since
1864; that he was first up the Ramshorn Gulch in 1866 and
hauled lumber from the Holter sawmill in that year; that the
mill was operated by water power from water taken from
Ramshorn; that the Miners' ditch was not there until 1868
or 1869; that its carrying capacity was from 75 to 100 inches
going over the ridge into Bivens; and that for the ten years
that he was familiar with the ditch this condition continued.

The respondents, in rebuttal, called Harry A. Teets, an
engineer, who testified that he measured these ditches in
August, 1923, in company with others, and that the McKay or
lower ditch at a point 300 feet from the head had a carrying
capacity of 280 inches of water, and that that was about the
average size of the ditch; that he measured the Miners' or
upper ditch about fifty feet below where the ditch was taken
out of Ramshorn gulch and found its carrying capacity to be
117 inches; that the ditch was then full of water; that he
made another measurement a half mile from the head of the
ditch and found it was there carrying sixty-two inches of
water.

Mr. Ray I. Haines accompanied Mr. Teets in his measure-
ment and corroborates his testimony. Mr. Haines also testi-
fied that during the past twenty years he had observed these

ditches, and that the Miners' ditch remained in the same condition.

Mr. Dan T. Marshall, called in rebuttal by plaintiffs, testified that he had known the Ramshorn for about forty years; that he first saw the Miners' ditch in 1882; that he noticed it particularly in 1892; that at that time he did not think it would carry over 100 inches at the head; and that for twenty years the ditch had remained practically the same.

There is not any evidence that the Hofeker ditch was used by the McKay interests prior to appropriations made by plaintiffs. There was very little conflict in the testimony of the witnesses as to the carrying capacity of these ditches or as to the date of their construction, the amount of water actually used or the purposes for which used; neither was there any substantial conflict in the testimony as to the dates this water was used for placer mining purposes by the appealing defendants.

The court awarded to the appealing defendants the right to
[3]    use 150 inches of the waters of the south fork of Ramshorn Creek through the Miners' ditch, from May 1 to November 1 of each year, and the right to use 300 inches "of the waters of Ramshorn Creek" through the McKay ditch, "beginning May 1 of each year and ending July 15," the date of the first appropriation being May 15, 1868, and of the second appropriation May 15, 1874. The court undoubtedly has the right to fix both the amount of water and the date when the same may be used. "There is no difference in principle between appropriations of waters measured by time and those measured by volume." (*Barnes* v. *Sabron*, 10 Nev. 217, 245; *Santa Paula Waterworks* v. *Peralta*, 113 Cal. 44, 45 Pac. 168.)

The court in this case gave to the appellants the maximum amount of water and the maximum time for its use which the evidence in the case justified.

This case comes quite clearly within the decision of this court in *Smith* v. *Duff*, 39 Mont. 382, 133 Am. St. Rep. 587,

102 Pac. 984. This latter decision is not in conflict with *Conrow* v. *Huffine,* 48 Mont. 437, 138 Pac. 1094.

Intervener Peter J. Simonsen bases his right upon the claim stated in his petition that he is the owner of certain lands in Bivens Gulch which require irrigation for agricultural purposes; that he and his predecessors in interest had for more than sixty years diverted and used waters of Bivens Gulch therefor; that a portion of said waters had been derived from the ditches of the appealing defendants, which conveyed waters from Ramshorn Creek into Bivens Gulch; that he had entered into a contract with the appealing defendants for the purchase of the right from the defendants to use such waters so diverted, and claims that he has also acquired the right to such use by prescription. At the trial a deed bearing date January 16, 1925, was put in evidence, by the terms of which the appealing defendants sold to intervener an undivided one-half interest in the Miners' ditch and the McKay ditch and the right to use the same for irrigation and domestic purposes upon his lands in Bivens Gulch, making reference to the waters conveyed through these ditches from Ramshorn Creek. The grantors, however, reserved the right "to use said waters as heretofore for mining purposes, and also for development of power for manufacturing, for milling purposes, etc." This deed was not delivered to intervener, but was held in escrow by the Sheridan State Bank, to be delivered to intervener upon his making the payments therein named. Intervener testified as to his ownership of the land; that it required irrigation; that he had a water right from the natural waters of Bivens Creek; that he used the waste waters from the McKay placer ground; and that about two-thirds of the waters used was this waste water. By this conveyance appealing defendants did not part with the right to use these waters or any of them for the original purpose of placer mining, but attempted to convey to intervener a right to the use of the waters when not so used by them.

Section 7097, Revised Codes of 1921, clearly makes it the
[4]  duty of a prior appropriator to turn back into the stream
all waters ''over and above what is actually and necessarily
used'' by him.

It is in evidence that the waters involved herein were originally used by Holter for operating a mill on Ramshorn Creek,
and it has been determined that the predecessors in interest
of Mrs. McNulty and Mrs. Swayze acquired the right to the
use of these waters on May 15, 1868, and it also clearly appears that such acquisition was for placer mining purposes
beyond the watershed of Ramshorn Creek, and that such
waters have been used continuously for that purpose.

Waters primarily belong in the watershed of their origin,
[5-8]  if there is land therein which requires irrigation. In
this case the waters were taken out to be used in the alien
watershed, where and after being so used they could not
return to the original stream either by percolation, seepage
or otherwise; hence they were lost to the area in the original
watershed. In this case, the right of the appealing defendants
was acquired many years ago, and their right to the use of
these waters in the alien watershed for placer mining purposes
is not here controverted and has but an incidental bearing
upon the question presented. Courts have many times sustained such foreign appropriation, and perhaps each case
would be determined upon its own individual merit. It is
sufficient here to say that the right to the use of this water
for placer mining purposes by the appellants has been sustained, but it may be appropriate to remark that the burden
placed upon the water should not be added to, to the detriment of appropriations made for irrigating lands within the
area of the stream from which the water is diverted. The
question of such appropriations has been heretofore before this
court, but in an imperfect manner, and the following cases
may be referred to: *Spokane Ranch & Water Co.* v. *Beatty,*
37 Mont. 342, 96 Pac. 727, 97 Pac. 838; *Lokowich* v. *City*

*of Helena,* 46 Mont. 575, 129 Pac. 1063; *Carlson* v. *City of Helena,* 43 Mont. 1, 114 Pac. 110.

It is settled law in this state that an appropriator may change the place of diversion and change the use of the water (*Thomas* v. *Ball,* 66 Mont. 161, 213 Pac. 597), but such change cannot be made to the prejudice of subsequent appropriators (*Head* v. *Hale,* 38 Mont. 302, 100 Pac. 222; *Carlson* v. *City of Helena,* supra; *Lokowich* v. *City of Helena,* supra). But an appropriator cannot be permitted to use the water for the purpose for which it is appropriated, and then, in the interims when not continually used by him, sell the same for use by other persons. The supreme court of Montana, in considering this question, used this language: "It has been held that an appropriator of water may change the use of his appropriation from one purpose to another, (*Meagher* v. *Hardenbrook,* 11 Mont. (385) 381, 28 Pac. 451, and cases cited), but it has never been held in this state (nor are we cited to like holding elsewhere) that after an appropriator has used the water sufficiently to answer the purpose of his appropriation, he might take the waters of the stream remaining, which he could not use for the purpose of his appropriation, and sell it to other parties, thereby depriving subsequent appropriators of their right to use the same." (*Creek* v. *Bozeman Waterworks Co.,* 15 Mont. 121, 131, 38 Pac. 459; see, also, *Tucker* v. *Missoula Light & Water Co.,* 77 Mont. 91, 250 Pac. 11.)

After the appealing defendants had used these waters for placer mining purposes and the water had drained below their land into Bivens Gulch, their jurisdiction over it ceased; it had subserved the purpose of their appropriation, and, as it could not drain back into the stream from which it was taken, it became waste, fugitive and vagrant water and subject to be treated as such, and the appropriators had no longer any jurisdiction over it or ownership in it. They did not own the corpus of the water; hence they had nothing to sell, and their attempted sale of the water or the right to use the same was wholly void. (*Eddy* v. *Simpson,* 3 Cal. 249, 58 Am. Dec.

408; *Kelly* v. *Natoma Water Co.,* 6 Cal. 105; *Hoffman* v. *Stone,* 7 Cal. 46; *Schulz* v. *Sweeny,* 19 Nev. 359, 3 Am. St. Rep. 888, 11 Pac. 253; *Clemens Horst Co.* v. *New Blue Mining Co.,* 177 Cal. 631, 171 Pac. 417; *Stepp* v. *Williams,* 52 Cal. App. 237, 198 Pac. 661; *Hagerman Irr. Co.* v. *East Grand Plains Drainage Dist.,* 25 N. M. 649, 187 Pac. 555; *Elgin* v. *Weatherstone,* 123 Wash. 429, 212 Pac. 562; 2 Wiel on Water Rights, 3d ed., p. 36 et seq.) "Where use of water is abandoned and resumed, use vests from date of resumption." (*O'Shea* v. *Doty,* 68 Mont. 316, 218 Pac. 658.)

The purchase by intervener of an interest in the appellants' ditches does not, of itself, make him a prior appropriator of the water. Furthermore, if the intervener bases his right to the use of these waters upon his deed of purchase, then such right could not be earlier than the date of the deed, which is January 16, 1925, for it is an additional burden on the use of this water.

In *Featherman* v. *Hennessy,* 43 Mont. 310, at page 317, 115 Pac. 983, 986, an appropriation of water had been made for power purposes in 1893. At a later date the appropriator changed the use of a portion of this water to agricultural purposes. The court, in determining the matter, said: "The use of ninety inches for agricultural purposes was found to have been initiated on April 1, 1905. This was a change of the original use and resulted in the consumption of the quantity so diverted to the new use, and therefore amounted pro tanto to a new appropriation * * * [so] that the right to use this amount for this purpose must bear the date at which the change was made."

Conceding that the evidence of intervener shows use for the [9] period required for prescription, we then have the proposition: "In order to constitute adverse possession of water, the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water; and use does not become adverse until it interferes with the use thereof by

the prior appropriators, and proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use.'' (*St. Onge* v. *Blakely,* 76 Mont. 1, at page 16, 245 Pac. 532; *Hays* v. *De Atley,* 65 Mont. 558, 212 Pac. 296.)

''That the right to the use of water for irrigation or other lawful purposes may be lost by one and acquired by another by prescription is settled beyond controversy in this jurisdiction.'' (*Verwolf* v. *Low Line Irr. Co.,* 70 Mont. 570, at page 577, 227 Pac. 68, 70.)

There is not any evidence in this record tending to show that appellants used any of this water when respondents required it, except at limited times for a few years prior to the commencement of this action, and falling far short of the period required for adverse usage or prescription.

We have critically examined this record and find no reversible error therein and the judgment and decree of the district is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.

---

OPINION ON REHEARING.

(Submitted September 19, 1927. Decided October 29, 1927.)

HONORABLE WM. H. POORMAN, District Judge, delivered the opinion of the court.

A rehearng was granted in this cause and the court indicated certain subjects on which it requested further enlightenment. On re-argument nothing new was developed, although counsel went much deeper into the proposition theretofore considered. The construction given by this court to the decree of 1875 (cause No. 1249) is the main thing against which the re-argument was directed, and that decree is, in fact, the very essence

of appellants' cause. The pleadings in that cause were stated, in substance, in the original opinion, and will not be restated.

Appellants make reference to the decision of this court in the case of *In re Smith's Estate,* 60 Mont. 276–301, 199 Pac. 696. That decision is to the effect that a final decision by a court of competent jurisdiction remains final as to the parties and their privies, unless modified, reversed or set aside. The reasons are very ably stated and are amply sustained by the citations there given. The doctrine stated is now, and has been, the law ever since the establishment of our jurisprudence.

As a matter of pleading, there is not any law that relieves a [10] defendant from pleading new matter on which affirmative relief is sought, with the same particularity as is required of the plaintiff; otherwise, the plaintiff would have no notice of what he had to meet at the trial.

In pleadings in equity, as stated by Blackstone, the rule was: "A defendant cannot pray anything in this, his answer, but to be dismissed the court, and, if he has any relief to pray against the plaintiff, he must do it by an original bill of his own, which is called a cross-bill." (2 Cooley's Blackstone, 3d ed., book 3, star page 448.)

The terms "set-off" and "recoupment" are by some authori- [11] ties included in the term "counterclaim." (*St. Louis Nat. Bank* v. *Gay,* 101 Cal. 286, 35 Pac. 876; *Raymond* v. *State,* 54 Miss. 562, 28 Am. Rep. 382.) And they must be pleaded in some form, or there is nothing on which to base a judgment. The rule as stated in Blackstone above has been consistently followed by both English and American courts. (*Erbes* v. *Smith,* 35 Mont. 38, 88 Pac. 568; *Union Mercantile Co.* v. *Jacobs, Sultan & Co.,* 20 Mont. 554, 52 Pac. 375; *Dolenty* v. *Rocky Mt. Bell Tel. Co.,* 41 Mont. 105, 108 Pac. 921; Story's Equity Pleadings, sec. 399a; *Abbott* v. *Monti,* 3 Colo. 561.)

The provision of section 9137, Revised Codes 1921, that, if relied upon, the answer must contain "a statement of any new matter constituting a defense or counterclaim," and the

provisions of section 9148 of the same Code that "where the defendant deems himself entitled to an affirmative judgment against the plaintiff, by reason of a counterclaim interposed by him, he must demand the judgment in his answer," are but expressions of the common law and were a part of our statutory law long prior to the commencement of said cause No. 1249. (Civil Prac. Act, Montana Territory, Bannack Statutes 1864–67, p. 51, sec. 46 et seq.) This same statute is found in Codified Statutes of Montana 1871–72, page 38, section 56, and also in all subsequent statutes of the territory and state of Montana.

*Hungarian Hill Gravel Min. Co.* v. *Moses*, 58 Cal. 168, was a much stronger case, so far as the allegations of the answer are concerned, than cause No. 1249. The trial court in that case granted the defendant affirmative relief, but the supreme court struck it from the decree, for the reason that: "The answer of the defendants contained none of the elements of a cross-complaint, as distinguished from a defense to plaintiff's action, and contained no prayer for affirmative relief. That part of the decree awarding affirmative relief should be stricken out."

It is true no appeal was taken from the decision of Judge Knowles, but it is likewise true that no water right was adjudicated by him; hence no appeal on that question was required nor would lie.

The origin of the water right claimed by predecessors of appellants was not a pleaded issue in cause No. 1249. Whether defendants in that cause claimed by purchase from the Holters, or whether the Holters owned any right, or whether they claimed by original appropriation, or whether they claimed any water right at all, their answer is wholly silent both as to allegation and demand, except by mere innuendo, and [12] that only as a defense. The first adjudication of appellants' rights was in the case now on appeal, and in the instant case both the pleadings and evidence of the appellants

are to the effect that their appropriation and the use of the water for more than fifty years were solely for mining purposes, and there was neither claim, demand nor pretense that they were using, or desired at any time to make use of, the water for any other purpose, except after their appropriation had been subserved to sell the surplus to intervener, and that is not permitted under our irrigation laws.

The trial court passed upon all the issues presented to it by the pleadings and evidence, and the findings are sustained thereby. The court could do no more. If appellants had additional rights, they were not urged.

Relating to the change in appropriation—and only as a matter of general discussion—the following additional authorities may be cited: *Hough* v. *Porter,* 51 Or. 318, 95 Pac. 732, 98 Pac. 1083.)

Reference is made to *Meagher* v. *Hardenbrook,* 11 Mont. 385, 28 Pac. 451. This case was decided in 1891, and involved the rights of tenants in common of a water right, and also the right to change the place of diversion and to change from "one lawful and beneficial purpose to another." The opinion does not refer to any statute, but the statutes then were the same as they are now. (Secs. 1252 and 1254, 5th Div. Comp. Stats. 1887, now secs. 7095 and 7098, Rev. Codes 1921.) Whether others are injured by such change is a question of fact, or a question of law based upon the facts. If no one is injured, no complaint can be sustained.

*Featherman* v. *Hennessey,* 43 Mont. 310, 115 Pac. 983, also referred to, was decided in 1911. The court found that others were injured by the proposed change, and affirmed the trial court in limiting "the use to the time and purpose for which appellant had made his appropriation and thereafter used it, subject to such change only, as to the purpose and place of use, as could be effected without infringement of the rights acquired by others pending such use."

We find no reason for changing the original opinion, and the order therein is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.